OPINION OF THE COURT
Marcy L. Kahn, J.
These two proceedings to confirm separate and unrelated arbitration awards present novel issues regarding judicial review and the sufficiency of the arbitral record to conduct that review via a new regulatory scheme under Rule 2130 (Rule 2130 or the Rule) of the Conduct Rules adopted by the National Association of Securities Dealers, Inc. (NASD)[1] governing the expungement of customer dispute information from NASD’s centralized database of brokers and dealers in the United States. As both matters raise identical issues under the same arbitral rule, these confirmation proceedings have been consolidated for decision.
As explained in this opinion, because the arbitrators in each case failed to comply with the applicable NASD regulatory framework sufficiently to permit judicial review of the parties’ requests for judicial confirmation of the arbitrators’ awards granting expungement of the respective underlying claims, petitioners’ motions for confirmation are held in abeyance and each matter is remanded to its respective arbitral authority for further proceedings in conformity with this opinion.
I. The Development of the NASD Regulatory Scheme
The new policy of the NASD/FINRA respecting expungement of customer dispute information can best be understood when viewed in its historical context.
*633 A. The Central Registration Depository
The Central Registration Depository (CRD) system is an electronic database used by NASD/FINRA, the Securities and Exchange Commission (SEC), state securities regulators and others which contains information relating to registration and licensing decisions made by those bodies. (NASD Notice of Proposed Rule Change, SR-NASD-2002-168 [filed Nov. 18, 2002], http://www.finra.org/web/groups/rules_regs/documents/ rule_filing/pOO 1015.pdf [NASD-2002-168], at 6 [accessed Jan. 5, 2009].) The CRD contains information about registered brokers, dealers and similar investment firms (firms or members) and their individual representatives and employees (individuals or associated persons), including criminal histories, disciplinary information, customer complaints, certain arbitration awards and other information which is submitted by members and regulatory authorities and is accessible both to regulators for their official use and to the investing public (NASD Notices to Members 99-54 [July 1999]).
Created in 1981 pursuant to policies developed by NASD and the North American Securities Administrators Association, Inc. (NASAA) (NASD-2002-168 at 6, 22), the CRD provides regulators access to a centralized repository of information about every registered firm or individual to assist them in fulfilling their regulatory responsibilities and investor protection obligations. (NASD Notice to Members 04-16 [NTM 04-16] at 212.) It also gives the public, most particularly investors and potential investors, access to accurate information about brokers with whom they conduct or might conduct business. (NASD-2002-168 at 7-8.) Information about a firm’s or individual’s record in any state or SRO is contained in the CRD and is available to every other state, regulator and SRO. The effectiveness of the centralized national CRD system depends on its containing complete accurate information. State regulators, including the Attorney General, rely on the CRD in lieu of maintaining their own separate regulatory record systems. (See NASD Notice to Members 99-09 [NTM 99-09] at 48 [Feb. 1999]; transcript of oral argument [tr], Aug. 21, 2007, at 28, line 18; at 40, line 8.)
The information for each individual is collected principally through that individual’s completion of a uniform application for securities industry registration or transfer (Form U-4) constituting his or her registration to perform investment-related work. The Form U-4 contains personal, employment and criminal history data, as well as information on any disciplinary *634 actions and civil court proceedings. (NTM 04-16 at 212.) Individuals have a continuing duty to report any such events (Form U-4 instructions at 1). These include the filing of any customer complaint (Form U-4 § 141), any adverse action by a firm or regulatory body (id. §§ 14C-14F), and the commencement of any regulatory or judicial proceeding or investigation relating to the individual’s investment-related work activity. (Id. § 14G or 14H.)
B. Expungement of Information from the CRD
The CRD and Form U-4 are designed to afford the public and regulators a complete and accurate picture of each individual and firm. (NASD Notice to Members 01-65 [NTM 01-65], Request for Comment on Proposed Rules and Policies Relating to Expungement of Information From the CRD, at 565 [Oct. 2001]; NASD-2002-168 at 6.) The registered information includes adverse awards and judgments, as well as reports of any conduct or allegations which are deemed to have regulatory value. Customer complaints must be reported, even when they have been dismissed. (Form U-4 § 141.) If a member believes that the information in the CRD would reflect adversely and unfairly on that member, he or she can insert a brief explanation of the circumstances leading to the complaint in a designated part of the Form U-4.[2]
Where these mechanisms would be inadequate to protect the member, certain information may be expunged from the database under very limited circumstances. (NTM 01-65 at 565; NASD-2002-168 at 6 [“narrowly defined circumstances”].) These include occasional situations in which the information would cause unjustified harm to the registrant’s reputation, or would be of no meaningful regulatory value. (Id.; NASD-2002168 at 14.) The reporting opportunities (e.g. U-4 Complaint DRP 11 28) and expungement mechanisms protect the interest of the brokerage community and reputations of its member firms and individuals. (NASD-2002-168 at 7.)
Notices discussing the CRD consistently state that expungement is an “extraordinary remedy” to be used only in “limited” *635 circumstances.[3] More commonly, when a customer complaint is dismissed, that fact is reflected in the CRD listing for that member. (See Form U-4.) The NASD has stated that even information as to dismissed claims has
“regulatory value as an early indicator of problems or as part of a larger pattern that may also include similar acts of misconduct that were found to have merit. Regulators understand the distinction between allegations and findings of misconduct, and NASD Regulation provides information ... to inform the public of that distinction.” (NTM 01-65 at 569 n 7.)
C. The Revision of Expungement Practice, 1999-2004
Prior to 1999, no restrictions existed on the permitted scope of expungement, and no guidelines governed the procedure by which firms and individuals could seek awards directing the NASD to expunge information from the CRD. (NTM 99-09 at 48.) The NASD treated expungement provisions in arbitration awards as enforceable orders, and expunged information where directed in an arbitral award, without the necessity of court confirmation. (NASAA Comment at 2; NASD-2002-168 at 22.) Expungement relief was also available where parties settled a claim prior to an arbitration hearing. The decision to expunge information was determined entirely by the scope of the settlement agreement negotiated by the litigants. (Id.) Brokers often succeeded in including provisions stating that all references and information concerning the claim would be expunged from the CRD. The NASD deemed inclusion in an arbitration award of such a settlement provision sufficient basis to expunge the information from the CRD. (NTM 01-65 at 565-566.)
By the late 1990s, however, many segments of the investment community had raised concerns that the integrity of the CRD was being compromised by the excessive granting of expungement requests. (NTM 99-09 at 48.) It was believed that too *636 many complaints were being deleted from the database, and that securities regulators and members of the public were no longer obtaining the comprehensive record of each regulated firm or dealer which the CRD had been intended to provide.
After consultation with NASAA, NASD responded by imposing a moratorium, effective January 19, 1999, on execution of arbitrator-ordered expungement directives in disputes between public customers and firms or individuals, absent confirmation of the award by a court. (NTM 99-09 at 47-48; see NTM 01-65; SEC Order Granting Approval of Proposed Rule Change [SEC Approval Statement], 68 Fed Reg 74667, 74669 [Dec. 24, 2003].) Over the next five years, the NASD and SEC solicited public comment in order to fashion a new regulatory procedure for members and their representatives to obtain expungement from the CRD of material relating to customer complaints.[4]
D. The New Expungement Scheme Supporting Rule 2130
The resulting regulatory framework included most prominently Rule 2130, together with other NASD notices.[5] Rule 2130 states in pertinent part:
“Obtaining an Order of Expungement of Customer Dispute Information from the Central Registration Depository (CRD System)
“(a) Members or associated persons seeking to expunge information from the CRD system arising from disputes with customers must obtain an order from a court of competent jurisdiction directing such expungement or confirming an arbitration award containing expungement relief.
“(b) Members or associated persons petitioning a court for expungement relief or seeking judicial *637 confirmation of an arbitration award containing ex-pungement relief must name NASD as an additional party . . . unless this requirement is waived pursuant to subparagraph (1) or (2) below.
“(1) Upon request, NASD may waive the obligation to name NASD as a party if NASD determines that the expungement relief is based on affirmative judicial or arbitral findings that:
“(A) the claim, allegation or information is factually impossible or clearly erroneous;
“(B) the registered person was not involved in the alleged investment-related sales practice violation, forgery, theft, misappropriation, or conversion of funds; or
“(C) the claim, allegation, or information is false.
“(2) If the expungement relief is based on judicial or arbitral findings other than those described above, NASD, in its sole discretion and under extraordinary circumstances, also may waive the obligation to name NASD as a party if it determines that:
“(A) the expungement relief and accompanying findings on which it is based are meritorious; and
“(B) the expungement would have no material adverse effect on investor protection, the integrity of the CRD system, or regulatory requirements.” (FINRA Manual Rule 2130.)
NASD designed these rules and notices (collectively, the new expungement regulatory scheme) in an effort to balance the need to maintain the integrity of the CRD as a comprehensive database for regulatory purposes with the legitimate desire of brokers and dealers to be relieved of the burden of having spurious claims maintained on their records. (See NASD Notice to Members 99-54 [NTM 99-54] at 351; Amendment No. 1 at 6, 7; SEC Approval Statement, 68 Fed Reg at 74671.)
This scheme contained several components. In Rule 2130, the NASD limited the scope of circumstances under which expungement of customer complaint information from the CRD would be appropriate.[6] The new scheme continued the ban against honoring arbitration awards standing alone, and hence made *638 permanent the requirement that a court must first review and confirm any award containing expungement relief. (NTM 99-09; Amendment No. 2 at 6.)
The NASD also added a requirement that it would only expunge material if the arbitrator or court had made specific affirmative findings that the material to be expunged fell within one of the three permitted grounds for expungement, and had based its expungement recommendation on those findings. (NASD-2002-168 at 14; compare NTM 01-65 at 566 [“Expungement should be granted . . . only after a determination by an independent adjudicator that the matter . . . meets at least one of the criteria”], with SEC Approval Statement, 68 Fed Reg at 74670, 74671 [distinguishing an arbitral finding which merely “matched one of the requisite standards”].)[7]
Apart from Rule 2130, NASD issued several notices to implement the new scheme. Notices to NASD members explained the new expungement standards and members’ obligations when seeking expungement. (NTM 04-16 at 123.) Materials sent to arbitrators informed them of the new standards for expungement (Arbitrator Training: Expungement), and of mandatory training requirements for consideration of expungement requests. (See http://www.guest.cvent.com/EVENTS/Register/ IdentityConfirmation.aspx?e=8cbcbblf-f9fb-47cl-a779472074f6c286 [last visited Mar. 14, 2008] [“Expungement Training Course”].) NASD issued explanatory material to the public (FAQs), and created procedures for notification of NASAA and state regulators when requests to grant or confirm expungement relief were made to courts. (See SEC Approval Statement, 68 Fed Reg at 74671 n 30.)
*639 E. Rule 2130 (b) (1) Criteria for Scope of Permitted Expungements
The NASD notices proposing the new rules made clear that their primary object in drafting the three criteria of Rule 2130 (b) (1) was to define those circumstances under which NASD would expunge information. (See e.g. NTM 01-65 at 563 [“establishment of certain criteria that must be met. . . before NASD Regulation would expunge certain information”], at 565 [fashioning the criteria that “warrant the extraordinary relief of expunging information from the CRD system”]; Amendment No. 1 at 8 [similar]; NTM 01-65 at 566; NTM 04-16 at 213 [Rule 2130 “permit(s) customer dispute information to be expunged from the CRD system only when” one of the three standards was met], and [arbitrators to “decide whether to grant expungement on the basis of one or more of the standards in Rule 2130”].)
To further protect these regulatory and investment-protection interests, NASD added a requirement that it must be named “as an additional party in any judicial proceeding . . . confirming an arbitration award containing expungement relief.” (SEC Approval Statement, 68 Fed Reg at 74667.) The NASD would appear and “oppose expunging dispute information unless” the information satisfied one or more of the newly established criteria. (NASD-2002-168 at 5.) As a result, the proposed rule allowed NASD to waive its participation as a party if “the ex-pungement order meets at least one of the standards for ex-pungement articulated in the proposed rule.” (Id.)
Thus, while Rule 2130 (b) was worded in terms of NASD’s role in court proceedings to confirm expungement awards, the NASD, in its rule-making notices, arbitrator training materials, and notices to members, consistently maintained that the purpose of Rule 2130 (b) was to specify the permitted circumstances for expungement. The criteria of Rule 2130 therefore perform a dual role: (1) specifying when expungement is permitted, and (2) helping NASD decide when to waive its role in actively opposing confirmation of expungement relief.[8]
The SEC approved this rule, as twice amended, in December 2003. (SEC Approval Statement, 68 Fed Reg at 74671.) By No *640 tice to Members 04-16, dated March 2004 (NTM 04-16), NASD announced that the Rule and accompanying expungement scheme would become effective on April 12, 2004, and that the new provisions would be applicable in all cases filed with NASD on or after that effective date. The UBS and Summit proceedings at bar are among the first cases governed by Rule 2130 to reach New York’s state courts for confirmation.
F. Mechanism for Customer Complaint Dispute Resolution
The Dispute Resolution Division of NASD/FINRA provides arbitration services for disputes involving its members and associated persons, including those arising from complaints by customers against securities industry firms or representatives. All parties seeking to arbitrate a matter must sign the industry’s Uniform Submission Agreement, under which they agree to “submit [disputes] ... to arbitration in accordance with the Constitution, By-Laws, Rules, Regulations, and/or Code of Arbitration Procedure of the sponsoring organization.” (Uniform Submission Agreement 1Í 1, http://www.finra.org/web/ groups/med_arb/documents/mediation_arbitration/p009438.pdf [accessed Jan. 5, 2009].) NASD/FINRA maintains its Rules of the Association, including, inter alla, its Codes of Arbitration Procedure (10000 and 12000 series)[9] and Conduct Rules (2000-3000 series), in the FINRA Manual.
The Code of Arbitration Procedure and the Conduct Rules are thus binding on all parties to a NASD arbitration. Hence, member firms and individuals seeking expungement of matters arising out of a customer claim are bound by Rule 2130, which *641 limits the arbitrator’s authority to award expungement relief. If an arbitrator recommends expungement of customer complaint information from the CRD, the affected firm or individual must also obtain court confirmation. In all such cases, regardless of NASD’s decision to participate, regulators of any state in which the member is registered may appear in the court proceeding to oppose expungement or to present other public policy considerations to the court. (SEC Approval Statement, 68 Fed Reg at 74671 n 30; FAQs, question Nos. 8, 9.)
II. Procedural History of the Proceedings
A. The Instant Litigation
By notice of petition and petition filed April 13, 2007, petitioners Summit Equities, Inc. and Peter O’Neill (collectively, Summit petitioners) commenced a proceeding (the Summit proceeding) pursuant to CPLR 7510 and under Rule 2130 to confirm an arbitration award in NASD Dispute Resolution case No. 04-04272 (the Summit arbitration) rendered pursuant to a stipulation of settlement between respondent Elizabeth Johnson and the Summit petitioners on May 22, 2006 by a panel of arbitrators appointed by NASD. The award, inter alla, recommended that all reference to the subject matter of the arbitration be expunged from the records maintained by NASD on petitioner O’Neill in the CRD. Respondent Johnson has not appeared in this proceeding and the NASD has not opposed the Summit petitioners’ confirmation application.
By notice of motion and affirmation filed May 2, 2007, the Attorney General sought leave of court to intervene in the proceeding for the purpose of opposing confirmation of so much of the arbitration award as recommended expungement of records from the CRD. Petitioners Summit and O’Neill opposed the Attorney General’s motion.[10]
By notice of petition and petition filed March 29, 2007, UBS Financial Services, Inc. and Karen A. Kurrasch (collectively, UBS petitioners) commenced a proceeding (the UBS proceeding) pursuant to CPLR 7510 and Rule 2130 to confirm an *642 arbitration award in NASD Dispute Resolution case No. 06-00520 (the UBS arbitration) rendered by an arbitrator appointed by respondent NASD Dispute Resolution, Inc. on February 6, 2007, after a hearing involving the UBS petitioners and respondent Marshal D. Gibson. The award, inter alla, recommended that all reference to the subject matter of the arbitration be expunged from the records maintained on Kurrasch by the NASD in the CRD. Respondent Gibson has not appeared in this proceeding, and FINRA does not oppose the UBS petitioners’ confirmation application.
By notice of motion and affirmation filed April 23, 2007, the Attorney General sought leave of court to intervene in the UBS proceeding for the purpose of opposing confirmation of so much of the arbitration award as recommended expungement of records from the CRD. Petitioners UBS and Kurrasch opposed the Attorney General’s motion.
The motions in both cases to intervene and confirm were joined for oral argument on August 21, 2007. At that time, this court granted the motion to intervene in each case in an oral ruling, but reserved decision on the motions to confirm. By separate decisions dated November 15, 2007, the court issued its written decisions further explaining the court’s oral ruling granting intervention in each case. Subsequent submissions have been made to the court by the parties in both proceedings.[11]
B. The Summit Arbitration Proceeding
In the Summit arbitration, on June 3, 2004, respondent Elizabeth Johnson filed a statement of claim against petitioners Summit and O’Neill, alleging claims of negligence, recklessness, deceptive practice and breach of the duties of good faith and supervision under state law in the handling of her account. (Affidavit of William A. Despo, Esq., sworn Feb. 28, 2007 [Despo Feb. 28, 2007 affidavit], exhibit E.) In October 2005, petitioner Summit[12] and respondent Johnson agreed to a stipulated award in lieu of a hearing. The confidential stipulation provided for a monetary payment, for the withdrawal of all claims against the *643 petitioners, and for inclusion in the award of a recommendation that all reference to the dispute should be expunged from the petitioners’ records in the CRD. (Stipulated award, NASD dispute resolution arbitration No. 04-04272 [the stipulated award], attached as exhibit 1 to the verified petition of Summit and O’Neill [Summit petition].) The stipulation contained the following language which the parties proposed for inclusion in the arbitrators’ recommendation supporting expungement: “The arbitration panel has made the following affirmative findings of fact: The registered person was not involved in the alleged investment-related sales practice violation, forgery, theft, misappropriation, or conversion of funds.” (Stipulated award §§ 3, 4.)
On May 6, 2006, the arbitration panel held a telephonic hearing with both counsel, but not the parties, on the subject of ex-pungement relief. (Supplemental affirmation of William A. Despo, Esq., sworn Aug. 21, 2007, exhibit A, Telephonic Ex-pungement Hearing for Johnson v Summit Equities, case No. 0404272.) The only evidence submitted at the hearing was an affidavit by petitioner Peter O’Neill, offered by counsel for petitioners.[13] Counsel for Johnson did not oppose the expungement request. The panel then issued its award by letter signed June 10, 2006, “granting] expungements . . . based solely upon 2130 (b) (1) B” but otherwise adopting the stipulated award. (Id. 1Í 6.)
C. The UBS Arbitration Proceeding
In the UBS arbitration, on February 2, 2006 respondent Gibson filed a statement of claim against his investment advisors, petitioners UBS and Kurrasch, alleging breach of contract, negligence, failure to supervise, misrepresentation, omission of facts and unsuitability of investment of his assets. Petitioners filed a joint answer on April 18, 2006. A contested arbitral evidentiary hearing was held by a single arbitrator on January 24, 2007. On February 6, 2007, the arbitrator issued his award dismissing Gibson’s claims in their entirety. The award also recommended the expungement of all reference to the arbitration from petitioner Kurrasch’s registration records maintained in the CRD. (Award, NASD dispute resolution arbitration No. 06-00520 [the UBS award], attached as exhibit A to the verified petition of UBS and Kurrasch [petition].) In conformity with *644 Rule 2130, the arbitrator advised petitioner Kurrasch that she had to obtain confirmation of the award, including the expungement recommendation, by a court of competent jurisdiction before NASD would expunge the information from her record in the CRD.[14]
III. Parties’ Contentions
In seeking confirmation of the respective awards, petitioners in each case maintain that the enactment by NASD of Rule 2130 did not affect the long-standing principles that judicial review of arbitral awards is limited and arbitrators’ determinations are entitled to great deference by the courts. Petitioners maintain that the arbitrator in each proceeding complied with the requirements of Rule 2130 by voicing the conclusion that the claim fell within one of the categories for expungement stated in the Rule. They also urge that under established decisional law, arbitrators need not offer the rationale for their conclusions in their awards. They argue that under either the federal or state standards, this court must confirm the award in each proceeding.
Arguing that an award should be confirmed if it offers even a barely colorable justification for its outcome, petitioners Summit and O’Neill further urge that the arbitrator provided adequate justification for their expungement recommendation, in that petitioners disputed all of the customer’s claims; they settled the case for a “nuisance value”; and the arbitrator rendered an award only after holding a hearing to consider the expungement request. They also note that Johnson voluntarily dismissed her claims against O’Neill prior to the final settlement, supporting the conclusion that petitioner O’Neill was “not involved” under Rule 2130 (b) (1) (B).
*645 Petitioners UBS and Gibson argue that their arbitrator issued the award after a fully contested hearing on the merits of the controversy, and thus had evidence and testimony on which to decide the expungement request.
Relying on Rule 2130 and its drafting history, the Attorney General argues that judicial review of arbitral expungement directives issued pursuant to the Rule requires the court to scrutinize whether the recommendation is supported by factual findings having a rational basis in the record. He contends that specific affirmative factual findings, based upon the record of the arbitral hearing, must support an arbitrator’s expungement recommendation before a court may confirm such an award. He argues that this court must order such a hearing, either before the respective arbitral panels or before this court.[15]
FINRA, which has appeared in both proceedings, acknowledges that Rule 2130 has added an “additional layer” of scrutiny to the consideration of requests for expungement of customer complaint information from the CRD, but maintains that the Rule imposes no particular additional requirements on arbitrators in fashioning their awards of expungement.
In reply, petitioners contend that the arbitrator in each case satisfied the “affirmative findings” requirement of Rule 2130 by incorporating the language of one of its three standards (Rule 2130 [b] [1] [A], [B], or [C]) into the expungement portion of the award. They argue that such a recital constitutes the required affirmative finding, and that by its express terms, the plain meaning of Rule 2130 is that an arbitral award of ex-pungement, like any other arbitral award, requires neither any proffer of the arbitrator’s rationale nor any reference to the factual support for the award, beyond a mere parroting of the language of the Rule identifying which of the three exceptional categories is involved in that particular case.
Relying upon the recent ruling in Karsner v Lothian (supra), the Attorney General also argues that this court lacks the authority to confirm the expungement awards in these cases, because the arbitrators issued mere recommendations that ex-pungement be granted, rather than including directives for such *646 relief in awards subject to the judicial confirmation process. In response, petitioners and FINRA contend that the Karsner court ignored the distinction in Rule 2130 between courts which “direct” expungement when they hear expungement requests in the first instance, and courts which are asked to confirm arbitral awards containing expungement “relief’ (Rule 2130 [a]). They also note that the administrative drafting history of Rule 2130 reveals an intent that courts confirm awards containing appropriate expungement relief under the Federal Arbitration Act [FAA] and corresponding state laws. FINRA additionally argues that when NASD/FINRA dispute resolution arbitrators grant relief “recommending] expungement,” they consider this an award subject to confirmation by a court.[16]
IV Applicable Legal Standards
These proceedings require the court to examine the effect of NASD’s adoption of Rule 2130 on existing standards for judicial review of arbitration awards which include as relief the ex-pungement of customer dispute information from the CRD.
A. Interplay of Federal and State Arbitration Standards
Federal arbitration law (codified in Federal Arbitration Act [9 USC] § 1 et seq.) applies to the arbitration of matters which “impact” or “apply to” interstate commerce, a fairly low threshold which renders the FAA applicable to a large number of cases. (Citizens Bank v Alafabco, Inc., 539 US 52, 53 [2003]; Matter of Diamond Waterproofing Sys., Inc. v 55 Liberty Owners Corp., 4 NY3d 247, 252 [2005].) While application of the FAA is easily triggered, it is not necessarily exclusive, and only displaces state law when the latter is inconsistent with the FAA or with its policies favoring arbitration. (Volt Information Sciences, Inc. v Board of Trustees of Leland Stanford Junior Univ., 489 US 468, 477 [1989]; Siegel, NY Prac § 607 [4th ed].) Hence, both federal and state law may govern the same case.[17]
The provisions of the FAA and of New York’s counterpart statute, CPLR article 75, are very similar (Hall St. Assoc., L.L.C. *647 v Mattel, Inc., 552 US —, —, 128 S Ct 1396, 1406 [2008] [FAA modeled after New York’s arbitration law]; Matter of Smith Barney, Harris Upham & Co. v Luckie, 85 NY2d 193, 205-206 [1995] [same]), especially with respect to judicial review of arbitration awards. Hence, both federal and New York state law relating to standards of review afford guidance to the court in these proceedings.
1. The Federal Arbitration Act
Section 9 of the Federal Arbitration Act provides that the court must confirm an award “unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11.” The pertinent provisions of section 10 of the FAA provide as follows:
“(a) In any of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration—
“(1) where the award was procured by corruption, fraud, or undue means;
“(2) where there was evident partiality or corruption in the arbitrators, or either of them;
“(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
“(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.”
Thus, section 10 of the FAA both authorizes courts to vacate awards and limits the grounds under which they may do so. (Hall St. Assoc., L.L.C., 552 US at —, 128 S Ct at 1404-1405; Shearson/American Express Inc. v McMahon, 482 US 220, 232 [1987], reh denied 483 US 1056 [1987][18] Case law interpreting the FAA has also long recognized that vacation of an arbitral *648 award is appropriate where the arbitrator has displayed a “manifest disregard” of governing law. (See e.g. Wilko v Swan, 346 US 427, 436 [1953], overruled on other grounds by Rodriguez de Quijos v Shearson/American Express, Inc., 490 US 477 [1989]; Hoeft v MVL Group, Inc., 343 F3d 57, 65 [2003]; Wien & Malkin LLP v Helmsley-Spear, Inc., 6 NY3d 471, 480-485 [2006].) Recently, however, the Supreme Court has rejected the notion that the “manifest disregard” standard constitutes a separate, nonstatutory ground of judicial review. (Hall St. Assoc., L.L.C., 552 US at —, 128 S Ct at 1404, 1406.) Still, the Court appears to endorse continued use of the concept, albeit as an interpretative standard[19] of FAA § 10. Therefore, it appears to this court that existing case law will continue to define the scope of the manifest disregard standard as an interpretation of FAA § 10 (a) (4). (See Chase Bank USA, N.A. v Hale, 19 Misc 3d 975 [Sup Ct, NY County 2008].)
2. New York CPLR Article 75
To the extent relevant here, the analogous New York statute relating to review directs the court to confirm an award unless “vacated or modified upon a ground specified in section 7511.” (CPLR 7510.) It provides the following grounds for vacation:
“1. The award shall be vacated on the application of a party who either participated in the arbitration or was served with a notice of intention to arbitrate if the court finds that the rights of that party were prejudiced by:
“(i) corruption, fraud or misconduct in procuring the award; or
“(ii) partiality of an arbitrator appointed as a neutral, except where the award was by confession; or
“(in) an arbitrator, or agency or person making the *649 award exceeded his power or so imperfectly executed it that a final and definite award upon the subject matter submitted was not made; or
“(iv) failure to follow the procedure of this article, unless the party applying to vacate the award continued with the arbitration with notice of the defect and without objection.
“2. The award shall be vacated on the application of a party who neither participated in the arbitration nor was served with a notice of intention to arbitrate[20]
if the court finds that:
“(i) the rights of that party were prejudiced by one of the grounds specified in paragraph one; or
“(ii) a valid agreement to arbitrate was not made; or
“(iii) the agreement to arbitrate had not been complied with . . . .” (CPLR 7511 [b].)
New York’s appellate courts have applied a further three-part test when considering the availability of vacatur on the ground of excessive use of power by an arbitrator:
“An arbitrator’s award will not be vacated unless it is clearly violative of some strong public policy, is totally irrational, or manifestly exceeds a specifically enumerated limitation on the arbitrator’s power (see Matter of Board of Educ. of Arlington Cent. School Dist. v Arlington Teachers Assn., 78 NY2d 33, 37 [1991]). An award is irrational if there is ‘no proof whatever to justify the award’ (Peckerman v D & D Assoc., 165 AD2d 289, 296 [1991]) . . . .” (Matter of Rockland County Bd. of Coop. Educ. Servs. v BOCES Staff Assn., 308 AD2d 452, 453 [2d Dept 2003]; see Matter of Henneberry v ING Capital Advisors, LLC, 10 NY3d 278, 284 [2008], rearg denied 10 NY3d 892 [2008] [“excess of power occurs only where the arbitrator’s award violates a strong public policy, is irrational or clearly exceeds a specifically enumerated limitation on the arbitrator’s power”]; Matter of NFB Inv. Servs. Corp. v *650 Fitzgerald, 49 AD3d 747, 748 [2d Dept 2008] [“An arbitration award can be vacated by a court pursuant to CPLR 7511 (b) on only three narrow grounds: if it is clearly violative of a strong public policy, if it is totally or completely irrational, or if it manifestly exceeds a specific, enumerated limitation on the arbitrators’ power”].)
As can be seen from these provisions, both federal and New York law grant arbitrators broad authority to resolve disputes through informal and expeditious means, and concomitantly limit the authority of the courts to modify or vacate arbitration awards. (Hall St. Assoc., L.L.C., 552 US at —, 128 S Ct at 1406; Wilko v Swan, 346 US at 436-437; Matter of Silverman [Benmor Coats], 61 NY2d 299, 307-309 [1984].) Thus, a court may not substitute its own factual findings or legal conclusions for those of the arbitrator, even when it believes the arbitrator’s interpretation of the law was erroneous. (Azrielant v Azrielant, 301 AD2d 269, 275 [1st Dept 2002], lv denied 99 NY2d 509 [2003].) The arbitrator’s authority is not unlimited, however CPatten v Signator Ins. Agency, Inc., 441 F3d 230, 235 [4th Cir 2006], cert denied 549 US 975 [2006]), and courts are bound to confirm only those awards that meet the statutory standards. (Shearson/ American Express Inc. v McMahon, 482 US at 232 [judicial review necessary to ensure arbitrators comply with FAA requirements].)
Notably for present purposes, the applicable statutory and common-law standards provide that arbitral awards may be vacated if the arbitrators exceed their specifically enumerated powers (9 USC § 10 [a] [4]; CPLR 7511 [b] [1] [iii]; Solvay Pharms., Inc. v Duramed Pharms., Inc., 442 F3d 471, 476 [6th Cir 2006]; Matter of Silverman [Benmor Coats], 61 NY2d at 308); manifestly disregard the law (Chase Bank USA, N.A. v Hale, 19 Mise 3d at 981-985; see Porzig v Dresdner, Kleinwort, Benson, N. Am. LLC, 497 F3d 133, 140 [2d Cir 2007]); issue an award that is totally irrational (Henneberry v INC Capital Advisors, LLC, supra-, Matter of Silverman [Benmor Coats], 61 NY2d at 308); or render an award entirely lacking in factual support (Hardy v Walsh Manning Sec., 341 F3d 126, 130, 132 [2d Cir 2003]; Matter of Peckerman v D & D Assoc., 165 AD2d at 296 [although assessment of evidence is for arbitrator, where no proof justifies award, rendering it entirely irrational, vacation is appropriate]).
In addition to these principles which govern judicial review of arbitration awards generally, statutes or regulations applicable *651 to a particular field may establish additional requirements to be met by arbitrators in rendering their awards, thereby creating additional grounds for modification or vacatur by reviewing courts. (See e.g. Porzig v Dresdner, Kleinwort, Benson, N. Am. LLC, 497 F3d at 142 [Age Discrimination in Employment Act (ADEA) requires arbitral award of attorneys’ fees]; Matter of Petrofsky [Allstate Ins. Co.], 54 NY2d 207, 210-211 [1981] [insurance regulations incorporated additional requirements for arbitrators and grounds for judicial review beyond those of CPLR article 75].) Rule 2130 and its accompanying scheme is such a regulation.
B. Additional Requirements Imposed by NASD Regarding Arbitrator-Ordered Expungements
Rule 2130 sets forth the obligations of NASD members and associated persons and the procedures to be followed by arbitrators where expungement of a customer complaint is sought. In pertinent part, the Rule requires that a broker-dealer seeking expungement of customer dispute information from the CRD “obtain a [court] order . . . confirming an arbitration award containing expungement relief.” (Rule 2130 [a].) In awards granting requests for expungement relief since the effective date of the Rule, NASD/FINRA arbitrators, in these cases and apparently in others, have included provisions in their awards “recommending” expungement under Rule 2130.[21]
Members and associated persons who are seeking expungement must also name NASD as a party to any court proceeding unless NASD decides to waive this obligation, either because one of the expungement criteria of Rule 2130 (b) (1) has been met, or in certain other circumstances not applicable here. (See Rule 2130 [b] [2] [B].)
The Rule and its accompanying expungement scheme are founded on the policy of NASD that expungement of customer complaints constitutes “extraordinary relief,” to be granted only in limited circumstances. (NTM 01-65 at 565; NTM 04-16 at 213.) Under the newly defined grounds for expungement, arbitrators may only grant expungement relief when the case falls within one of these three categories. These changes, along with the new affirmative findings standard, require the court to independently scrutinize requests for expungement relief before confirming these portions of arbitration awards.
*652 The SEC Approval Statement provides further indication that the SEC and NASD expect courts to play an active role in examining the record to ensure that only appropriate cases be approved for expungement. At one point in the development of the scheme, there had been a suggestion that the determination whether the complaint met one of the three criteria for expungement be determined by the affected firm or individual: “NASD and NASAA agree that CRD information should be expunged only on the basis of specific, limited criteria. . . . [However,] NASAA suggests that NASD [require] that NASD members may seek expungement only if their case meets one of the three criteria.” (See Amendment No. 2 at 7.) The NASD rejected this approach to achieving the Rule’s objectives, stating: “Federal and state courts, that are fully informed about the investor protection and regulatory implications of a proposed expungement order, . . . should be trusted to make the proper decision.” (Amendment No. 2 at 7, quoted in SEC Approval Statement, 68 Fed Reg at 74670.) The SEC, similarly, endorsed this conclusion. (SEC Approval Statement, 68 Fed Reg at 74671.) Thus, when NASD imposed these limitations on expungement relief, they placed enhanced reliance on the reviewing courts to make sure that only appropriate cases, which “[meet] one of the three criteria” are approved for expungement. (Amendment No. 2 at 7.)
C. Applicable Principles of Statutory Construction
As a general proposition, so long as a statute is clear on its face, its language must serve as the sole source of illumination of the intent of its drafters: “Where the language of the statute is clear and unambiguous, the intent of the framers is to be first sought in the words and language employed, and, if the words plainly and clearly express the sense of the framers, resort need not be had to other means of interpretation.” (McKinney’s Cons Laws of NY, Book 1, Statutes § 76, Comment, at 171-172 [2008].)
The Court of Appeals has held, however, that legislative history is an appropriate object of examination even where the language of the provision is clear, because “[t]he primary consideration of courts in interpreting a statute is to ‘ascertain and give effect to the intention’ ” of the drafters. (Riley v County of Broome, 95 NY2d 455, 463 [2000] [citations omitted].) “[T]he legislative history of an enactment may also be relevant and ‘is not to be ignored, even if words be clear.’ ” (Id., quoting McKinney’s Cons Laws of NY, Book 1, Statutes § 124, at 252.) *653 “When aid to construction of the meaning of words, as used in the statute, is available, there certainly can be no ‘rule of law’ which forbids its use, however clear the words may appear on ‘superficial examination.’ ” (Riley v County of Broome, 95 NY2d at 463, quoting New York State Bankers Assn, v Albright, 38 NY2d 430, 437 [1975] [following statement of United States Supreme Court that when the plain meaning of a statute produced not an absurd result, but merely an unreasonable one “plainly at variance with the policy of the legislation as a whole,” the Supreme Court has followed that policy rather than hewing slavishly to the literal words of the statute (internal quotation marks omitted)], quoting United States v American Trucking Assns., Inc., 310 US 534, 543-544 [1940]; see Benesowitz v Metropolitan Life Ins. Co., 8 NY3d 661, 668 [2007].)
V Analysis
The court’s review requires a careful balancing of the deferential standard usually applicable to review of arbitration awards with the more exacting review arising out of the NASD policy strictly limiting expungements. Confirmation of an arbitral expungement award is proper only when the court is satisfied that the arbitrator’s award has met the standards of the new regulatory scheme; vacation is only appropriate in conformity with the standards discussed above.
Further, in view of the facial ambiguity of the Rule in terms of its dual role, its silence on the scope of judicial review of ex-pungement awards and the plethora of pronouncements by its drafters about their intent, this court would abjure its own proper role in applying Rule 2130 were it not to interpret it in light of its history and the circumstances surrounding its development. (See United States v American Trucking Assns., supra; Benesowitz v Metropolitan Life Ins. Co., supra.)
A. Grounds for Expungement Under Rule 2130
As discussed, under the new scheme, NASD will only expunge customer complaint information from the CRD if it falls within one of the three categories listed in Rule 2130 (b) (1). Dismissal of a customer’s case is a necessary, but not, in itself, sufficient, condition to warrant expungement. (Amendment No. 2 at 6, 7; NTM 01-65 at 566 [“merely prevailing ... is not, by itself, an appropriate ground”]; Arbitrator Training: Expungement, fourth [unnumbered] question; see also FAQs, question No. 5.) In circumstances where customers simply do not prevail, but where the asserted claims would not “unfairly tarnish” the rep *654 utation of the member or associated person, expungement is not warranted. (NTM 01-65 at 566.)
In each of the instant awards, the arbitrators, as noted, have included a statement in their award that the case comes within one of the three grounds for expungement permitted by the Rule. Indeed, the Attorney General does not so much controvert these conclusions as challenge the sufficiency of the arbitrators’ review and the findings underlying them. Thus, although on their faces, these awards each recite one of the three categories for expungement authorized by Rule 2130, the question before this court is whether the arbitrators’ conclusions were supported by affirmative findings based upon the record as required by Rule 2130.
B. The Affirmative Factual Findings Requirement
The requirement of Rule 2130 (b) (1) that the arbitrators or court expunge customer complaint information from the CRD only upon an affirmative finding that the complaint falls within one of its three stated grounds serves several purposes. First, NASD is able to consider such finding when deciding whether to waive its participation to oppose expungement at the confirmation proceedings. (FAQs, question Nos. 3, 8; Amendment No. 2 at 5.) Second, state regulators may rely on the findings in determining whether to intervene in a judicial confirmation proceeding in order to oppose the expungement. (Amendment No. 2 at 5; NTM 04-16 at 214.) And third, the court from which confirmation is sought is able to review the underlying finding to determine whether the complaint should be confirmed as meeting the criteria of the Rule. (Amendment No. 2 at 7.) In each situation, the adjudicator or regulator cannot begin to make any determination without the facts that the proponents of the expungement award claim support their ex-pungement request.
In the instant cases, each arbitration award contains a statement which petitioners have characterized as an “affirmative finding.” These statements are merely verbatim quotes of one of the three standards announced in Rule 2130 (b) (1), however. The arbitration award in Summit quotes the language of Rule 2130 (b) (1) (B), stating that “[t]he registered person was not involved in the alleged investment-related sales practice violation, [or] forgery, [or] theft.” (Despo Feb. 28, 2007 affidavit, exhibit B, at 2 [emphasis added].) The award in UBS quotes the language from Rule 2130 (b) (1) (A), to the effect that the claim *655 was “factually impossible or clearly erroneous.” (UBS and Kurrasch petition, filed Mar. 29, 2007, exhibit A, at 2 [emphasis added].) Nothing in either award demonstrates the “finding” of any facts specific to the case. The Summit award states neither the conduct in which petitioners were not engaged, nor any facts supporting a conclusion that petitioners were not the parties involved. In UBS, nothing indicates which aspects of the customer complaint were impossible or erroneous. Moreover, the language of the findings in each case are couched in the disjunctive as alternative conclusions, sounding more like general denials characteristic of a pleading, rather than specific findings after a hearing or upon the parties’ stipulated agreement in the particular case.
The contention by petitioners in each proceeding that the restating of the language of the Rule constitutes “affirmative findings” fails, as it rests on two erroneous premises. First, it confuses findings of fact with conclusions of law. Findings involve those specific facts which the finder of fact has found to be true, while conclusions are the legal consequences which flow from the factual findings.[22] (See Black’s Law Dictionary 664 [8th ed 2004] [defining “finding of fact” as “(a) determination ... of a fact supported by evidence in the record”; defining “general finding” as “(a)n undifferentiated finding in favor of one party”; defining “special finding” as “(a) finding of the necessary . . . facts to support a judgment”], 308 [defining “conclusion of law” as “inference on a question of law, made as a result of a factual showing”].) A quotation from a statute or rule cannot be a factual finding about a distinct case. Statements that contentions are “factually impossible,” “clearly erroneous” or “false” (Rule 2130 [b] [1] [A], [C]) are legal conclusions, which must be supported by findings based upon specific facts in each case. The language “not involved in the alleged . . . violation” (Rule 2130 [b] [1] [B]) similarly is a legal conclusion, in turn based on definitions in the securities regulations.[23] Only statements which contain evidentiary facts and demon *656 strate that the circumstances of Rule 2130 (b) (1) exist in the particular case constitute factual findings that support the conclusions represented by the Rule’s standards.
Furthermore, repetition in these awards of the language from Rule 2130 can in no sense be considered a finding which is “affirmative.” In the absence of any reference at all to the specific facts of the case, the determination is devoid of any affirmative factual finding.
The drafting history of the Rule further supports this reading of the Rule.[24] From the earliest discussions of the issue, the NASD notices leading to Rule 2130 referred to the required findings as “factual findings” and the arbitrators or courts who had to make these findings as “fact finders.” (NTM 01-65 at 563 [“where an expungement order is based on a finding by a fact finder (i.e., either an arbitrator or a cowri)”], at 566, col 1 [“A fact finder would be required to make a specific finding that a claim was factually impossible”; NASD believes that “before any customer dispute information is expunged, an independent fact finder should make a finding that expungement is warranted on one of these three bases”] [emphases added]; NASD-2002-168 at 20; see also Amendment No. 1, 68 Fed Reg at 11437.) These comments make clear the drafters’ use of the commonly understood meaning of factual findings as set forth above, and which were specific to the claim for which expungement was sought.
Indeed, the qualifier “affirmative” was added to proposed Rule 2130 in order to meet concerns that members seeking ex-pungement relief would arrange for “findings” which consisted *657 simply of pro forma recitals that “matched [the wording of] one of the required standards.” (SEC Approval Statement, 68 Fed Reg at 74670.) As the SEC Approval Statement noted: “In the initial proposed rule filing, the NASD’s proposal simply required that a finding be made by an arbitrator that matched one of the proposed standards.” (SEC Approval Statement, 68 Fed Reg at 74672 [emphasis added].) Many commentators voiced criticism of this, expressing concern: that members and associated persons would be able to negotiate for the inclusion of a finding in the arbitration settlement that matched one of the requisite standards. (Id.) The proposed Rule was then amended to add the qualifier: “affirmative.”[25] The SEC explained the intent of NASD in proffering this amendment, saying: “By requiring an ‘affirmative determination’ on the part of the arbitrator that one of the standards was met, the NASD asserted that . . . the ability of members ... to ‘buy clean records’ will be greatly reduced. The Commission agrees with the NASD’s analysis in this regard.” (Id. [emphasis added].) This modification was consistent with NASD’s position in its notice first proposing Rule 2130, which stated that it would “allow expungement . . . , with a uniform requirement that there be specific judicial or arbitral findings in all such cases” (NASD-2002-168 at 14) and that “NASD will . . . oppose expunging dispute information in such judicial proceedings unless the arbitrators or the court has made specific findings that the subject matter . . . [meets one of the three standards].” (Id. at 5 [emphasis added].)
The words “affirmative” and “findings” are not mysterious terms of art, and have long-standing recognition in the common law to mean “specific,” “detailed” or “unequivocal” determinations particular to the case. (See e.g. Chicago & North Western R. Co. v Atchison, T. & S. F. R. Co., 387 US 326, 339 [1967] [affirmative findings sufficient to disclose that applicable requirements met].) The purpose of affirmative findings, of course, is to make meaningful judicial review possible. (Matter of Shereff v *658 Tax Commn. of City of NY., 42 AD2d 593 [2d Dept 1973]; see also Chicago & North Western R. Co. v Atchison, T. & S. F. R. Co., 387 US at 339 [affirmative findings which disclose that statutory requirements have been met].)
The notices leading to Rule 2130 evince the very same rationale. (See SEC Approval Statement, 68 Fed Reg at 74669 [gives NASD “opportunity to review the basis for expungement and to oppose an expungement . . . unless there is a specific finding that the expungement meets one of the prescribed standards”]; Amendment No. 1, 68 Fed Reg at 11436 [findings enable NASD to determine whether to waive participation]; FAQs, question No. 12 [same].)
Petitioners’ argument conflates two distinct functions of the Rule, the first being to limit customer dispute information subject to expungement to one of the three prescribed categories, and the second mandating that arbitrators provide affirmative findings to assure that the case comes within one of the three criteria. Petitioners have characterized the three criteria in the Rule as comprising the “affirmative findings.” But as the above history makes clear, the criteria for expungement serve to limit the universe of cases eligible for this exceptional relief, while the affirmative findings requirement assures that arbitrators have engaged in the necessary analysis to select the case for expungement based upon those three criteria.[26] Accordingly, a mere recitation of the Rule’s criteria cannot satisfy the requirement that findings of fact be set forth which are specific to that case and bring it within one of the criteria for expungement.
Petitioners also argue that under well-settled principles, common-law arbitrators need not disclose any rationale for their award. Although this proposition generally governs arbitral review,[27] the new regulatory scheme has explicitly incorporated the affirmative findings requirement, without which NASD will not expunge customer complaint material. Thus, in this context, it is immaterial that arbitral awards ordinarily need not contain *659 the arbitrator’s rationale: the provision in question is one of those that adds a specific requirement that arbitrators make affirmative findings to support awards of expungement relief. (See Porzig v Dresdner, Kleinwort, Benson, N. Am. LLC, supra [additional requirements of the ADEA]; Matter of Petrofsky [Allstate Ins. Co.], supra [additional requirements of the Insurance Law].)
Similarly unpersuasive is petitioners’ argument that the eventual rejection of an unrelated rule change proposed by NASD[28] which would have required a written explanation upon a customer’s request demonstrates that Rule 2130 in its original form does not require arbitrators to state the factual basis for their recommendation of expungement. Those rules generally applicable to FINRA and other arbitrations are superseded by the particular requirements of Rule 2130 with respect to ex-pungement directives made by FINRA arbitrators and courts.
Petitioners next argue that Matter of Goldstein v Preisler (24 AD3d 441 [2d Dept 2005]) requires this court to confirm the instant awards.[29] Goldstein is inapposite here, however. In Gold-stein, the Appellate Division reversed a judgment which had vacated an expungement award, holding that the confirmation court should not substitute its own judgment for that of the arbitrator or of parties who had stipulated to an expungement provision in an award. The Court appeared to place particular emphasis on the fact that no challenge had been made to the award in the confirmation proceeding. (Id. at 442.)
Goldstein, however, involved an arbitral proceeding which antedated the effective date of Rule 2130. Thus, the expungement order at issue in that case was not governed by the new scheme, with its exacting standards for expungement and the requirement of affirmative findings. Neither were the policy considerations and attendant roles and responsibilities created by Rule 2130 for the NASD, state regulators or reviewing courts at work in Goldstein. (See SEC Approval Statement, 68 Fed Reg at 74671 n 30.) In short, Goldstein does not aid petitioners here.
In sum, Rule 2130 requires that awards granting expungement recommendations contain affirmative findings of the *660 specific facts on which the recommendation is based. Neither of the awards presented here contain any such findings, however.
C. The Need for Arbitrators to State the Basis for Expungement Relief in the Award
Alternatively, petitioners in both proceedings argue that this court may infer the existence of affirmative findings, notwithstanding their absence from the formal awards issued by the arbitrators. In support of this position, they cite the settled principles that courts must show deference to the decisions of arbitrators (e.g. Duferco Inti. Steel Trading v T. Klaveness Shipping A/S, 333 F3d 383, 388 [2d Cir 2003]; Wien & Malkin LLP, 6 NY3d at 475) and that ££[a]n arbitration award must be upheld when the arbitrator £offer[s] even a barely colorable justification for the outcome reached.’ ” (Wien & Malkin LLP, 6 NY3d at 479, quoting Matter of Andros Compania Maritima, S.A. [Marc Rich & Co., A.G.], 579 F2d 691, 704 [2d Cir 1978].)
In the present cases, however, the arbitrators have provided absolutely no factual findings which could provide a basis for their recommendation of expungement relief. The situation is not unlike the one presented in Brookdale Hosp. Med. Ctr. v Local 1199, Natl. Health & Human Serv. Empls. Union (107 F Supp 2d 283 [SD NY 2000]). There, in an arbitration of claims of sexual harassment, the failure of the arbitrator to set forth factual findings left the court unable to determine whether the award contravened public policy under title VII of the Civil Rights Act of 1964 (42 USC § 2000e-2 [a] [1]) and therefore unable to decide whether to confirm or vacate an arbitral award which had reinstated male employees who had been accused of sexual harassment. (Brookdale Hosp. Med. Ctr., supra.) The court remanded the matter to the arbitrator to clarify in writing the factual predicate for her findings. (Id.; see also Rich v Spartis, 516 F3d 75, 83-84 [2d Cir 2008] [remand required where insufficient information to complete review].) Similarly, this court is presented with awards which do not contain sufficient factual information to enable it to determine whether they were issued in conformity with the applicable governing standards and policies, namely, those contained in Rule 2130.
As the arbitrators in these two proceedings have offered absolutely no justification, not even barely colorable ones, for their recommendations of expungement, the general principles requiring confirmation are inapplicable here. The court is entirely unable to infer the arbitrators’ affirmative findings *661 from their awards or other pronouncements in the proceedings. Furthermore, the ability of state regulators, as well as FINRA officials, to assess the need for their involvement in the proceeding is similarly undermined.
D. The Need for an Arbitral Record Adequate for Judicial Review
In drafting and approving Rule 2130, NASD and the SEC adopted a requirement of an independent judicial review and confirmation as a precondition to expungement by the NASD. (Amendment No. 2 at 7, quoted in SEC Approval Statement, 68 Fed Reg at 74670 [courts “should be trusted to make the proper decision” concerning proposed expungement orders].) Meaningful judicial review for purposes of resolving the motions for confirmation of these expungement awards and determining their compliance with the applicable standards of Rule 2130 (Rule 2130 [b] [1] [A] [UBS], [B] [Summit]) requires that the court be able to examine the relevant portions of the record supporting each award.[30]
In UBS, despite a fully contested hearing, the parties have provided the court with only the pleadings and the arbitrator’s award. In Summit, the parties settled their case before reaching a hearing. The only record was the customer’s complaint, petitioners’ answers and the stipulation. The petitioners’ answer contained only denials and affirmative defenses. The record supplied to this court was later supplemented with a letter from the arbitration panel stating that it had held a telephonic ex-pungement hearing.[31] The letter revealed the existence of the O’Neill affidavit, but that affidavit has not been furnished to the court.
Petitioners argue that the arbitrators were not required to develop any record in the arbitral proceedings as a precondition to awarding expungement relief, either under the Rule or as a matter of the common law governing arbitrations. Petitioners correctly observe that the NASD did not explicitly include a *662 requirement in Rule 2130 that a record must be made in ex-pungement proceedings. The FINRA Code of Arbitration Procedure already requires a record in all NASD arbitration proceedings, however. (FINRA Code of Arbitration Procedure rule 10326 [a]; see FINRA Code of Arbitration Procedure for Customer Disputes rule 12606 [for arbitration proceedings commenced after Apr. 16, 2007].)
Furthermore, it appears that in developing the Rule 2130 scheme, NASD considered the availability of an adequate record to be essential to a proper resolution of an expungement request. When it undertook to reform the expungement process, the NASD also expressed concern about the frequency of ex-pungement relief being granted without the availability of any record:
“Most customer/broker disputes are resolved in arbitration or, alternatively, are settled by the parties without the involvement of a finder of fact. Typically, neither of these dispute resolution methods results in a record that explicitly identifies the rationale for granting expungement relief.
“ ‘Stipulated awards’ . . . are a source of particular concern because typically there has been no hearing on the merits, no independent fact finder involved in the negotiations, and no rationale provided for the expungement. While there may be legitimate reasons for the expungement, those reasons generally are not provided in a stipulated award or settlement.” (NASD NTM 01-65 at 566.)
Accordingly, in its own careful planning and implementation of the Rule 2130 scheme, NASD/FINRA has taken great pains to ensure that arbitrators are encouraged[32] to base their expungement determinations on an adequate evidentiary record, whether in a fully contested hearing, a telephonic expungement hearing, or through submission of additional information. (Arbitrator Training: Expungement, question No. 6.)[33]
*663 As noted, the provision of a record for the judicial review of expungement recommendations also plays an important role in enabling both the NASD and state regulators to preserve the integrity of the CRD by conducting a meaningful review of proposed expungement directives, as the parties to an arbitration may not have adequately represented the interests of the public. (SEC Approval Statement, 68 Fed Reg at 74671 n 30; see letter dated Dec. 31, 2001 from Joseph Borg, NASAA president, to Barbara Sweeney, NASD secretary, at 5, 6.)
Petitioners argue that this court should defer to the arbitrators’ determination, if it can infer a proper ground for their conclusions from the facts of each proceeding. (Willemijn Houdstermaatschappij, BV, 103 F3d at 12.) In Willemijn, the court observed that its evaluation of the arbitrators’ conclusions was “nearly impossible,” due to the scant record of the arbitral proceeding which had been provided, but proceeded to search the record to identify a basis for the arbitrators’ award. (Id.) Of course, where, as in the instant cases, the court has no record at all to consider, even such a review is impossible.
Finally, petitioners argue that the recent proposal by FINRA to add new Rule 12805 to the FINRA Code of Arbitration Procedure (Rule 12805 or the proposed Rule),[34] requiring arbitrators considering expungement requests to hold recorded hearings in *664 every case and explain the underlying factual basis for all ex-pungement relief, demonstrates that the arbitrators in the instant cases were not required to make affirmative findings or develop a record in the instant proceedings. Petitioners have misapprehended the remedial function of the proposed Rule.
In proposing Rule 12805, FINRA observed that, contrary to its own expectation in issuing Rule 2130, in practice, arbitrators often ratified expungement requests without making any inquiry into the underlying circumstances of settlement agreements:
“Sometimes, arbitrators will order expungement at the conclusion of an evidentiary hearing on the merits of the case. More often, however, arbitrators will order expungement at the request of a party to facilitate settlement of the dispute. For example, customers may receive monetary compensation as part of a settlement, the terms of which require the customer to consent to (or not oppose) the entry of a stipulated award containing an order of expungement. In such cases, FINRA expected that arbitrators would examine the amount paid to any party and any other terms and conditions of the settlement that might raise concerns about the associated person’s behavior before awarding expungement. Contrary to this expectation, however, arbitrators often did not inquire into the terms of settlement agreements.” (2008 Rule Proposal at 9.)
This statement by FINRA concerning the reason for the proposed rule change makes clear that FINRA promulgated the proposed Rule in order to insure that its intended goals in promulgating Rule 2130 were being fulfilled. FINRA therefore sought to ensure that arbitrators “perform the critical fact finding necessary” so that expungement relief was granted only in appropriate cases, “as demonstrated in a recent state court case,” and in conformity with FINRA’s own original expectations. (Id. at 6, 9, citing Sage, Rutty & Co., Inc. v Salzberg, supra.) The proposed Rule therefore merely insures compliance with the requirements of Rule 2130 that arbitrators must consider the facts, develop a record and, if directing expungement, “document one of the narrow grounds specified in Rule 2130” (id. at 6), in cases in which expungement of customer complaint information is being sought. (Id. at 9; see Rule 12805 *665 [c].)[35] For these reasons, petitioners’ argument based upon FIN-RA’s promulgation of proposed Rule 12805 is unavailing; the proposed Rule in fact supports the conclusion that the existence of a record was intended by NASD/FINRA as an essential element of its Rule 2130 scheme.
For all of these reasons, the effective operation of Rule 2130 depends on the existence of an adequate record to support the arbitral findings that one or more of the three criteria for ex-pungement has been met. The absence of a reviewable record in the instant cases precludes this court from conducting the judicial review mandated by the Rule in cases in which arbitrators award expungement relief.
E. The Sufficiency of Arbitrators’ Expungement Determinations for Judicial Confirmation
The Attorney General asks this court to adopt the view of the Court of Appeals for the District of Columbia Circuit in Karsner v Lothian (532 F3d 876 [2008], supra), that a reviewing court lacks authority under the FAA, and by implication, any analogous state statute such as CPLR article 75, to confirm awards of expungement relief where arbitrators fail to order or direct ex-pungement, but instead merely recommend such relief. This court declines to adopt the position advanced by the Attorney General.
At the outset, the court’s comments on the confirmability of the arbitral determination in that case were obiter dictum, and, in contrast to the instant proceedings, not raised by the parties for disposition by the court. The sole issue presented to the Court of Appeals in Karsner was the District Court’s ruling on the motion of the Maryland Attorney General to intervene in the judicial confirmation proceedings. Furthermore, the decision of the Karsner court is not binding on this court. (People v Kin Kan, 78 NY2d 54, 59-60 [1991].)
On the merits, the Rule by its terms makes clear that NASD was establishing two alternative routes for members and associated persons to obtain expungement of information from the CRD by “ obtaining] an order from a court of competent jurisdiction,” either “directing such expungement” in the first instance, or “confirming an arbitration award containing ex- *666 pungement relief.” (Rule 2130 [a].) Thus, in a direct court proceeding for expungement, the court is empowered to issue an order directing expungement. By contrast, where the application is made during an arbitration, there is no executable order of expungement until a reviewing court issues an order confirming the arbitral award containing expungement relief.
NASD could not have been clearer about the respective roles contemplated for courts and arbitrators in enforcing the new Rule: there would be no expungement without a court order. Put otherwise, under the Rule, expungement could not take place merely at the direction of an arbitrator. To interpret the Rule as requiring an arbitrator to use the language of an order or directive, therefore, misinterprets the Rule. It also ignores the intent of the NASD as reflected in the drafting history of the Rule.
The historical record reviewed earlier, from NASD’s 1999 moratorium against executing arbitral expungement directives to its 2004 promulgation of the requirement of court confirmation of any award with expungement relief, clearly demonstrates the intent to have courts review awards containing expungement relief for confirmation, modification or vacation as appropriate under 9 USC §§ 9 and 10 and parallel state laws. The Rule was developed in direct response to criticism that arbitrators wielded too much power in directing expungement of customer dispute information from the CRD without judicial oversight. Where the request for expungement arises in the course of a FINRA arbitration, the Rule clearly contemplates a two-step process in which the first step is the determination by the arbitrator(s), based upon an affirmative factual finding, that one of the three grounds for expungement has been satisfied. That determination is not, however, self-executing. It must be confirmed in the second step of the process through judicial review before it assumes enforceable status and will be honored by FINRA.
In this regard, the process for obtaining expungement by FINRA from the CRD where the dispute is subject to arbitration is analogous to the referral of a federal court pretrial matter to a magistrate judge to hear and determine. (See 28 USC § 636; Fed Rules Civ Pro rule 72.) The magistrate judge hears the parties, considers the evidence and offers her determination of the dispute in a recommendation for disposition, including, where appropriate, findings of fact. The recommendation announces the magistrate judge’s final disposition *667 of the matter, even though it is denominated a “recommendation.” Nonetheless, that determination is not self-executing, but is subject to review by the referring district judge, who will thereafter accept, modify or reject it. Only upon the district judge’s order does the prevailing party have an enforceable order.[36]
The implementation of arbitral awards of expungement relief under Rule 2130 follows a parallel path: the arbitrators hear the parties, consider the evidence and announce their final determination of the dispute in an award. Where they find that expungement should be ordered, they state that they are recommending or directing such relief. But regardless of the language employed, it is understood that expungement can no longer be obtained merely on the basis of a factually based determination by an arbitrator in an award: a court must review it and order that it occur. The arbitrator’s employment of the language of “recommendation,” therefore, merely reflects the “subject to confirmation” limitation on the arbitrator’s power and concomitant enhancement of the court’s role under the Rule.[37]
Indeed, the interpretation sought by the Attorney General here and adopted in dictum in Karsner would defeat the intended operation of Rule 2130. To preclude judicial review based on the notion that the arbitrator’s determination was merely a recommendation would disregard both the language of the Rule and its intent as revealed in its drafting history. Moreover, in this situation, the interpretation advanced by FINRA is entitled to deference, because the issue involves the agency’s interpretation of its own rule. (See Matter of Gaines v New York *668 State Div. of Hous. & Community Renewal, 90 NY2d 545, 548 [1997],)[38]
Accordingly, for all of these reasons, this court declines to adopt the view of the Court of Appeals in Karsner and holds that the language used by the arbitrators in expressing their views on the issue of expungement in these awards does not preclude confirmation of the awards, should appropriate affirmative findings and record support be forthcoming after remand.
VI. Conclusion
As the arbitrators in both proceedings have failed to make affirmative factual findings to support their awards of expungement relief and the parties have not furnished record support for such relief, this court has insufficient information to enable it to complete the review required by Rule 2130. Accordingly, it will neither confirm nor vacate these awards. Instead, these cases must be remanded to the original FINRA dispute resolution arbitrators in each case with a direction to provide amended awards containing specific affirmative factual findings in each case justifying the expungement recommendations, along with the portions of the record on which those findings are based, in sufficient detail to enable this court to conduct a meaningful, albeit limited, judicial review as required by Rule 2130.
The court shall retain jurisdiction of these proceedings, each of which may be restored to the court’s calendar following remittal and compliance with this decision and order, upon the request of any party.

. NASD is a self-regulatory organization (SRO) which performs a dual role of regulating its members, i.e., firms and individuals in the securities industry, and representing its members’ interests. In July 2007, NASD was reorganized to become the Financial Industry Regulatory Authority, Inc. (FINRA). This opinion will reference the organization as either “NASD” or “FINRA,” as appropriate for the context.

. Form U-4, Customer Compl./Arbitration/Civil Litigation (Disclosure Reporting Page) (U-4 Complaint DRP), at 23, II 28. See also NTM 01-65 at 566, 569, n 10 (explanation section of Form U-4 should be used, e.g., to note dismissals of complaints).

. See e.g. NTM 01-65 at 565; SEC release No. 34-47475, Notice of Filing of Proposed Rule Change and Amendment No. 1 Thereto (Amendment No. 1), 68 Fed Reg 11435, 11437 (Mar. 4, 2003); NASD, Arbitrator Training: Ex-pungement, fourth (unnumbered) question, “Should Arbitrators Routinely Grant Requests for Expungement?” (Feb. 2006), http://www.finra.org/ ArbitrationMediation/N eutrals/Education/ArbitratorTraining/p016101 (accessed Jan. 5, 2009); Rule 2130 Frequently Asked Questions (FAQs), question No. 5, http://www.finra.org/Industry/Compliance/Registration/CRD/ FilingGuidance/p005224 (accessed Jan. 5, 2009).

. NTM 01-65; NASD-2002-168 (introducing first draft of proposed Rule 2130); Amendment No. 1; Amendment No. 2 to proposed Rule 2130, letter from Shirley H. Weiss, Associate General Counsel, NASD, to Jonathan G. Katz, Secretary, SEC (Sept. 11, 2003) (Amendment No. 2), http://www.finra.org/ web/groups/industry/ip/reg/rulfil/documents/rulefilings/p001019.pdf (accessed Jan. 5, 2009).

. Rule 2130 is contained in the Conduct Rules portion of the FINRA Manual, which governs the conduct and responsibilities of NASD members (http://finra.complinet.com [accessed Jan. 5, 2009]). Rule 2130, effective April 12, 2004, summarizes the role of the NASD and the responsibilities of its members in seeking expungement of such material. The roles and responsibilities of other relevant entities in the expungement process are set forth in other notices addressed to arbitrators, courts, state regulators, NASD, and the public.

. (See Rule 2130 [b] [1].) As explained more fully infra, this provision, when taken together with NASD’s other notices, both establishes the limits of permitted expungements of customer dispute information and specifies the *638 circumstances under which NASD would waive its participation in court confirmation proceedings to oppose confirmation of awards containing ex-pungement relief.

. The SEC noted:
“With respect to . . . the ‘buying of clean records,’ the Commission is satisfied that the NASD’s requirement that an ‘affirmative’ determination be made by an arbitrator will provide sufficient regulatory protection. In the initial proposed rule filing, the NASD’s proposal simply required that a finding be made by an arbitrator that matched one of the proposed standards . . . By requiring an ‘affirmative determination’ on the part of the arbitrator that one of the standards was met, the NASD asserted that this concern . . . will be greatly reduced.” (SEC Approval Statement, 68 Fed Reg at 74671.)

. Indeed, all parties in the two proceedings at bar, including FINRA, agree that the three standards recited in Rule 2130 (b) (1) serve both to announce the circumstances in which FINRA will waive its participation in a judicial confirmation proceeding, and to define the circumstances under which an arbitrator or court may grant expungement. (See tr at 48, lines 13-15; at *640 70, lines 8-11; at 114, line 22 through 115, line 12 [FINRA]; at 61, lines 17-19 [UBS]; at 99, lines 6-8 [Summit].) Although other courts have understood the Rule as merely defining the circumstances under which NASD would appear in judicial confirmation proceedings (see Matter of Zaferion v Holgado, Sup Ct, NY County, Apr. 14, 2008, index No. 102996/07; Matter of Kay v Abrams, 19 Misc 3d 371 [Sup Ct, NY County 2008]; but see Matter of BNY Inv. Ctr. Inc. [Bacchus], 2008 NY Slip Op 31668[U] [2008] [assuming a dual role for the Rule]; Sage, Rutty & Co., Inc. v Salzberg, 2007 NY Slip Op 31406[U] [2007] [expressly so holding]), that view has not been advanced in these proceedings, and, in any case, seems to this court unsupported by the aforementioned history and prior statements by the NASD and the SEC about the Rule.

. Dispute resolution matters commenced prior to April 16, 2007 are governed by the Code set forth in the 10000 series. For matters commenced on or after April 16, 2007, the newer Code in the 12000 series governs. (See e.g. rule 12101 [contains explanation of effective date], http://finra. complinet.com/en/display/display.html?rbid=2403&record_id=5179& element_id=4100&highlight=12101 #r5179 [accessed Jan. 5, 2009].)

. On July 5, 2007, this court issued a judgment and order granting the Summit petitioners’ motion to confirm the expungement award, noting that there had been no opposition to the motion. On July 10, 2007, the court first learned of the then-pending intervention application, which had not been fully submitted or received by this court. On July 13, the court held a telephonic conference with all counsel, and on July 19, 2007, the Summit petitioners and the Attorney General entered a stipulation consenting to the court’s vacation of its July 5 order to permit review of the motion to intervene.

. In addition to further submissions by the parties, NASAA sought and received this court’s permission to appear in both of these confirmation proceedings as amicus curiae. The Securities Industry and Financial Markets Association sought and received the court’s authorization to appear as amicus curiae in the UBS proceeding.

. For reasons not disclosed to this court, Johnson had previously withdrawn her complaint against O’Neill.

. Neither the affidavit nor any indication of its contents has been provided to this court.

. The arbitration awards in each of these proceedings contain similar language, providing that the arbitrator(s)
“recommend the expungement of all reference to the above-captioned arbitration from [the respondent’s] registration record maintained by the NASD Central Registration Depository (‘CRD’), with the understanding that, pursuant to NASD Notices to Members 04-16, [the respondent] must obtain confirmation from a court of competent jurisdiction before the CRD will execute the expungement directive.” (Stipulated award IN 3, 4, attached as exhibit B to affirmation of James J. Park, Esq., sworn May 2, 2007 [Summit]; award U 2, attached as exhibit 2 to affirmation of R. Verle Johnson, Esq., filed Apr. 23, 2007 [UBS]; see also Karsner v Lothian, 532 F3d 876, 887 n 13 [DC Cir 2008] [employing identical language].)

. Amicus curiae NASAA argues that the regulatory framework established following adoption of Rule 2130 contained strict criteria and procedures for use in considering expungement requests, based on the public policy that expungement of such records is an “extraordinary remedy,” and that arbitrators who fail to apply these standards are acting in excess of their powers.

. These parties also observe that the Attorney General has advanced this argument in similar expungement confirmation proceedings in New York State courts, uniformly unsuccessfully. (See Matter of Zaferion v Holgado, supra, and Kay v Abrams, supra [both implicitly rejecting the argument]; Matter of BNY Inv. Ctr. Inc. [Bacchus], 2008 NY Slip Op 31668[U], *5 [explicitly rejecting same argument].)

. The parties have advanced their contentions under both federal and New York law, and choice of law has not been an issue in these proceedings. In any case, this court’s resolution of the issue would be the same under either statute.

. “In enacting § 10(a), Congress impressed limited, but critical, safeguards onto [the confirmation] process, ones that respected the importance and flexibility of private dispute resolution mechanisms, but at the same time barred federal courts from confirming awards tainted by partiality, a lack of elementary procedural fairness, corruption, or similar misconduct . . . Since *648 federal courts are not rubber stamps, parties may not, by private agreement, relieve them of their obligation to review arbitration awards for compliance with § 10(a).” (Hoeft v MVL Group, Inc., 343 F3d 57, 64-65 [2d Cir 2003]; see also Matter of Carty [Nationwide Ins. Co.], 149 AD2d 328, 329 [1st Dept 1989] [courts may not simply “rubber-stamp” arbitral awards]; Matteson v Ryder Sys. Inc., 99 F3d 108, 114 [3d Cir 1996] [deference not equivalent to grant of limitless power].)

. The Supreme Court noted that the manifest disregard standard may have “merely referred to the § 10 grounds collectively,” or may have been “shorthand for § 10(a)(3) or § 10(a)(4).” (Hall St. Assoc., L.L.C., 552 US at —, 128 S Ct at 1404.) The Court did not, however, expressly resolve this question in Hall St.

. While the New York State Attorney General was not a party to the arbitration proceedings, as noted, this court has granted him leave to intervene in the instant proceedings. Therefore, under section 7511 (b) (2) (i), he may assert any of the grounds of CPLR 7511 (b) (1) in opposition to the motions to confirm the awards.

. See n 14 supra.

. The Rule itself differentiates findings from conclusions by alluding to “expungement relief and accompanying findings on which it is based.” (Rule 2130 [b] [2] [A] [emphasis added].)

. See e.g. Rule 2130 (c), which states: “For purposes of this rule, the terms ‘sales practice violation,’ ‘investment-related,’ and ‘involved’ shall have the meanings set forth in the . . . [Form U4] in effect at the time of issuance of the subject expungement order.” (See Instructions, FINRA Rev Form U-4 [Oct. 2005], at 2-3, http://www.finra.Org/web/groups/industry/@ip/@comp/ @regis/documents/appsupportdocs/p015112.pdf [accessed Jan. 6, 2009].)

. The fact that FINRA now argues that a quotation of one of the standards satisfies the affirmative findings requirement, even when considered in light of the general principle that an agency’s interpretation of its own rule is entitled to deference (see e.g. Matter of IG Second Generation Partners L.P. v New York State Div. of Hous. & Community Renewal, Off. of Rent Admin., 10 NY3d 474, 478 [2008]), is not persuasive. These proceedings do not involve any application by NASD of its own rules, however. (See n 38 infra.) Moreover, the official statements of the NASD about the Rule, as published in the notices, amendments and SEC Approval Statement quoted previously, are to the contrary. It is the drafting history of the Rule that merits this court’s examination to determine the drafters’ intent, not subsequent statements by FINRA counsel made in the context of an ongoing litigation. (Cf. McKechnie v Ortiz, 132 AD2d 472, 475 [1st Dept 1987] [post-enactment statements regarding legislation, even by bill’s sponsor, are irrelevant to determining law’s meaning and intent]; Civil Serv. Empls. Assn, v County of Oneida, 78 AD2d 1004, 1005 [4th Dept 1980], Iv denied 53 NY2d 603 [1981] [while pre-enactment statements properly part of legislative history, post-enactment statements are irrelevant and properly excluded].)

. The NASD explained:
“Under the current moratorium, it is possible that respondents may agree to pay damages as a quid pro quo for expungement and [thereby] obtain court confirmation. . . . NASD has determined to modify the language describing the standards . . . [to] require an affirmative . . . finding that the registered person was not involved . . .
“NASD arbitrator training materials will make clear that an ex-pungement order must be premised on an affirmative determination.” (Amendment No. 2 at 6-7 [emphases added].)

. Indeed, in its recent notice proposing remedial rule changes, FINRA itself explicitly referred to the three standards as “conclusions.” (Notice of Proposed Rule Change at 10 [Mar. 13, 2008] [2008 Rule Proposal], http:// www.finra.org/web/groups/rules_regs/documents/rule_filing/p038134.pdf [accessed Jan. 6, 2009] [arbitrators provided no facts to support conclusion that claims “factually impossible”]; see text accompanying n 34 infra.)

. See e.g. Willemijn Houdstermaatschappij, BV v Standard Microsystems Corp., 103 F3d 9, 12 (2d Cir 1997); Siegel v Titan Indus. Corp., 779 F2d 891, 894 (2d Cir 1985).

. SEC release No. 34-52009, “Notice of Proposed Rule Change to Provide Written Explanations in Arbitration Awards Upon the Request of Customers” (proposed July 11, 2005).

. Two recent nisi prius decisions, Matter of Kay v Abrams (supra) and Matter of Zaferion v Holgado (supra), also involving challenges by the Attorney General to confirmation of NASD arbitral expungement recommendations under Rule 2130, have so held.

. A reviewing court cannot determine whether the case qualifies for ex-pungement under the Rule unless it can review the record upon which the arbitrators made their determination. (See Amendment No. 2 at 7.) Without a record basis for determining whether or not arbitrators have exceeded their powers in recommending expungement, the court’s role remains that of a rubber stamp. (See Matter of City of Yonkers v Willsea, 141 AD2d 820, 821 [2d Dept 1988] [where award contains no indication of evidence relied on or of arbitrator’s factual findings, meaningful review impossible].)

. No record of that hearing has been furnished to the court.

. The training materials state: “An arbitrator who is uncomfortable with signing any stipulated award or who believes that he or she cannot make an affirmative finding based on the evidence presented is not required to do so and should not sign the stipulated award.” (Arbitrator Training: Expungement, question No. 6.)

. Even where the parties have consented to waive a full hearing, Rule 2130 still requires a limited hearing on expungement which is sufficiently extensive to allow the arbitrators to determine whether the case falls within the Rule based upon affirmative findings of fact. (See Arbitrator Training: Ex- *663 pungement, question No. 5: “Can Arbitrators Order Expungement in a Stipulated Award?”; question No. 6: “What if Arbitrators Do Not Believe They Have Enough Information?”)

. Proposed FINRA Code of Arbitration Procedure rule 12805 provides as follows:
“12805. Expungement of Customer Dispute Information under Rule 2130
“In order to grant expungement of customer dispute information under Rule 2130, the panel must:
“(a) Hold a recorded hearing session (by telephone or in person) regarding the appropriateness of expungement. This paragraph will apply to cases administered under Rule 12800 even if a customer did not request a hearing on the merits.
“(b) In cases involving settlements, review settlement documents and consider the amount of payments made to any party and any other terms and conditions of a settlement.
“(c) Indicate in the arbitration award which of the Rule 2130 grounds for expungement serve(s) as the basis for its expungement order and provide a brief written explanation of the reason(s) for its finding that one or more Rule 2130 grounds for expungement applies to the facts of the case.
“(d) Assess all forum fees for hearing sessions in which the sole topic is the determination of the appropriateness of expungement against the parties requesting expungement relief.”

. FINRA also noted that “the requirement of a written explanation would provide regulators with additional insight into why arbitrators awarded expungement based on what might appear to be questionable facts and circumstances . . . .” (2008 Rule Proposal at 10.)

. The differing scope of review by the district judge of a magistrate judge’s pretrial order (see Fed Rules Civ Pro rule 72 [a] [“clearly erroneous” standard for nondispositive pretrial orders]; Fed Rules Civ Pro rule 72 [b] [de nova review of dispositive pretrial matters]) from that dictated by the FAA or parallel state law is of no moment for purposes of the present discussion.

. The expungement provisions in each of the awards here at issue explicitly state that the affected members “must obtain confirmation from a court of competent jurisdiction before the CRD will execute the expungement directive.” (See Summit stipulated award HH 3, 4, quoted in n 14, supra.) The references in the award in the Summit proceeding that the arbitral panel “grants expungement,” and in both proceedings that the award includes an “expungement directive,” further demonstrate the finality of the arbitrators’ positions and their recognition of their role under the administrative scheme. (Id.)

. The appropriate application of this principle in this context stands in contrast to the effort of petitioners to apply it to FINRA’s contention as to the sufficiency of the arbitrators’ affirmative findings, as the latter assessment does not involve a regulatoiy interpretation for which FINRA is responsible, but rather judicial review of arbitrators’ factual findings. (See n 24, supra.)