## CHARLES FERRATO ET AL. *v.* WEBSTER BANK
## (AC 20913)

Mihalakos, Dranginis and Shea, Js.

Argued September 11, 2001—officially released January 15, 2002

*Linda N. Mayo*, for the appellant (defendant).

*Stephen G. Silverberg*, for the appellees (plaintiffs).

*Opinion*

SHEA, J. The defendant, Webster Bank, appeals from the judgment of the trial court awarding the plaintiffs, Charles Ferrato, then a Hartford County deputy sheriff, and Hartford Fire Insurance Company, $87,131.56 in damages because Webster Bank's predecessor in interest, Eagle Federal Savings Bank (Eagle Bank),[1] failed to comply with a bank execution served pursuant to General Statutes § 52-367a. On appeal, the defendant claims that the court improperly (1) concluded that funds erroneously credited to a banking customer's account constituted a debt due the account holder by the bank and were subject to execution pursuant to § 52-367a,[2] (2) concluded that Eagle Bank's stop-payment order with respect to these funds was untimely because it occurred after the midnight deadline

---

[1] By virtue of a merger, Webster Bank, as the surviving corporation, acquired all the liabilities of Eagle Bank and the separate existence of Eagle Bank ceased. See General Statutes § 33-820 (a).

[2] General Statutes § 52-367a provides in relevant part: "If any such banking institution upon which such execution is served and upon which such demand is made is indebted to the judgment debtor, it shall pay to such officer, in the manner and at the time hereinafter described, the amount of such indebtedness not exceeding the amount due on such execution, to be received and applied on such execution by such officer. Such banking institution shall act upon such execution according to section 42a-4-303 before its midnight deadline, as defined in section 42a-4-104. If such banking institution fails or refuses to pay over to such officer the amount of such debt, not exceeding the amount due on such execution, such banking institution shall be liable in an action therefor to the judgment creditor named in such execution, and the amount so recovered by such judgment creditor shall be applied toward the payment of the amount due on such execution."

imposed by § 52-367a[3] and (3) failed to render judgment in favor of the plaintiffs in the amount of $9901.88. We agree with the defendant and reverse in part the judgment of the trial court.

The following facts are relevant to our disposition of this appeal. On June 25, 1997, Hartford Fire Insurance Company obtained a judgment for $59,308.60 against Par Painting, Inc., a Connecticut corporation and an account holder at Eagle Bank. On December 5, 1997, the court issued a bank execution against Par Painting, Inc., demanding $68,885.42, an amount that included postjudgment interest and the statutory fees allowed the serving officer. On January 13, 1998, Rotha Contracting Company, Inc., another customer of the bank, requested that the proceeds of a certificate of deposit that it owned be deposited into the Rotha Contracting Company, Inc., checking account. An Eagle Bank employee mistakenly caused the proceeds, amounting to $109,792.99, to be deposited into the Par Painting, Inc., account. Ferrato served the execution on Eagle Bank before noon on January 15, 1998. The Par Painting, Inc., account showed a balance of $119,694.87 at the bank's closing time on that date. On January 21, 1998, Eagle Bank issued and mailed to Ferrato a teller's check for $68,885.42 in full payment of the execution. That same day, but subsequent to mailing its check, Eagle Bank discovered its accounting error. The bank corrected the error by debiting the Par Painting, Inc., account by $109,792.99 and crediting the same amount to the Rotha Contracting Company, Inc., account.[4]

---

[3] The term "midnight deadline," is defined in General Statutes § 42a-4-104 (a) (10) as "midnight on its next banking day following the banking day on which it receives the relevant item or notice or from which the time for taking action commences to run, whichever is later . . . ."

[4] That reduction in the Par Painting, Inc., account left a balance of $9901.88, which the defendant concedes Eagle Bank should have paid to Ferrato at the time the execution was served on that bank.

The next day, January 22, 1998, Eagle Bank stopped payment on the check and so informed Ferrato, who nevertheless deposited the check into his trustee account in March, 1998. The check was dishonored as a stopped payment item and was returned to Ferrato. It later became an exhibit at the trial of this case.

At trial, the plaintiffs claimed that the right of the bank to correct its error expired at midnight on January 16, 1998, pursuant to § 52-367a.[5] The court agreed and rendered judgment against the defendant as follows:

"Amount of check on which payment was stopped: $68,885.42;

"Interest from 1/19/98 to 12/29/98 under General Statutes § 37-3a (10 percent times 344 days): $6492.21;

"12 percent interest re offer of judgment dated 12/30/98 through 3/31/00: $10,372.45;

"12 percent interest re offer of judgment dated 4/1/00 through 5/31/00 (61 days): $1381.48 [Total] $87,131.56."

I

The defendant first claims that the court improperly (1) concluded that the $109,792.99 mistakenly deposited into the judgment debtor's account constituted a debt due the judgment debtor by the defendant and (2) rendered judgment for the plaintiffs in the amount of $87,131.56. Specifically, the defendant claims that the court failed to recognize that § 52-367a conditions a bank's obligation to pay the amount demanded by an execution on the existence of an indebtedness of the bank to the judgment debtor. We agree with the defendant and reverse the judgment of the trial court.

[5] General Statutes § 52-367a provides in relevant part that "[s]uch banking institution shall act upon such execution according to section 42a-4-303 before its midnight deadline, as defined in section 42a-4-104. . . ."

The threshold question before us is whether the entire nominal balance of the judgment debtor's account constituted a debt due from the defendant to the judgment debtor and was subject to execution pursuant to § 52-367a. Our analysis of this issue is guided by well established principles of statutory construction. "Statutory construction is a question of law and therefore our review is plenary. . . . [O]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . As with any issue of statutory interpretation, our initial guide is the language of the statute itself." (Citations omitted; internal quotation marks omitted.) *Herbert S. Newman & Partners, P.C.* v. *CFC Construction Ltd. Partnership*, 236 Conn. 750, 755–56, 674 A.2d 1313 (1996). "If the words of a statute are unambiguous, we assume that they express the legislature's intent." *Stein* v. *Hillebrand*, 240 Conn. 35, 40, 688 A.2d 1317 (1997).

Section 52-367a authorizes a judgment creditor to execute against any debts due from any banking institution to a judgment debtor that is not a natural person. This statute provides in relevant part that "[i]f any such banking institution upon which such execution is served and upon which such demand is made is indebted to the judgment debtor, it shall pay to such officer, in the manner and at the time hereinafter described, the amount of such indebtedness not exceeding the amount due on such execution, to be received and applied on such execution by such officer. . . ." General Statutes § 52-367a.

In our view, the plain language of § 52-367a expresses the legislature's intent to condition a bank's obligation to comply with a service of execution on the existence of a debt owed to the judgment debtor by the banking institution on which the execution is served. Thus, the bank's obligation is not absolute, but rather it is limited by the amount of the bank's indebtedness to the judg-

ment debtor. This interpretation is in accord with our Supreme Court's comments on a definitional subsection of the postjudgment procedures statutes. "Although [General Statutes] § 52-350a (16) defines 'property' broadly to encompass 'any real or personal property in which the judgment debtor has an interest which he could assign or transfer, including . . . any present or future right or interest . . . [and] any debt, whether due or to become due,' it does not specify what constitutes [a] . . . 'debt.' While it is reasonable to infer from this language the legislature's intent to allow a judgment creditor to execute against all forms of a judgment debtor's assets, it would be unreasonable to infer an intent to encompass property in which a judgment debtor lacks any cognizable interest whatsoever." *Fleet Bank Connecticut, N.A.* v. *Carillo*, 240 Conn. 343, 349, 691 A.2d 1068 (1997).

The defendant asserts, and we agree, that the judgment debtor did not have any cognizable interest in the funds erroneously credited to its account. "Deposits . . . create the relation of debtor and creditor between the bank and the depositor." *Alexiou* v. *Bridgeport-People's Savings Bank*, 110 Conn. 397, 399, 148 A. 374 (1930). "[A] bank is indebted to its account holders for the amount of the funds that *they* have deposited . . . ." (Citations omitted; emphasis added.) *Frigon* v. *Enfield Savings & Loan Assn.*, 195 Conn. 82, 87, 486 A.2d 630 (1985). A debt is "[t]hat which is due from one person to another, whether money, goods, or services; that which one person is bound to pay to another, or to perform for his benefit; thing owed; an obligation or liability . . . that of which payment is liable to be exacted. . . . Debt contemplates not only an obligation upon the debtor to pay, but a reciprocal right on the part of the creditor to enforce payment . . . ." (Citations omitted; internal quotation marks omitted.)

*Lenox Realty Co.* v. *Hackett*, 122 Conn. 143, 146, 187 A. 895 (1936).

The requirements and obligations imposed by § 52-367a simply do not apply to any portion of a depositor's account that does not represent a debt due from the bank to the depositor. In the present case, the defendant was indebted to Par Painting, Inc., only for $9901.88, the total amount of the judgment debtor's deposits on the date of the execution. The $109,792.99 erroneously credited to its account was not a debt due the judgment debtor and was not subject to execution. The defendant, therefore, was not bound to pay this sum to the judgment debtor, and the judgment debtor had no right to enforce payment of that sum. Accordingly, § 52-367a does not authorize execution against funds erroneously credited to the judgment debtor's account.

We conclude that the court improperly rendered judgment for the plaintiffs in the amount of $87,131.56 because this figure included the funds erroneously deposited in the account, which funds were not subject to execution under § 52-367a.

II

The defendant next challenges the court's conclusion that Eagle Bank's stop-payment order was untimely because it occurred after the midnight deadline imposed by § 52-367a. We conclude that the defendant's action was timely with respect to that amount actually owed to a third party account holder and credited to the judgment debtor in error.

We determined in part I that § 52-367a does not authorize execution against funds that do not constitute a debt owed by the bank to the judgment debtor. Therefore, because the defendant lacked authority to issue to the plaintiffs funds that improperly were deposited in the judgment debtor's account, the midnight deadline

referenced in § 52-367a is inapplicable to the funds owed to Rotha Contracting Company, Inc. In the absence of any superseding deadline, a bank's right to issue a stop-payment order drawn on its account at another bank is governed by General Statutes §§ 42a-4-303 and 42a-4-403. Pursuant to § 42a-4-303, stop-payment orders are timely if they are received by the payor bank within a reasonable time to allow the bank to act on the instruction before the bank has taken any action on the item as described in § 42a-4-303.[6]

The defendant issued its check on January 21, 1998. The next day, January 22, 1998, the defendant, having discovered its accounting error, stopped payment on its check. The defendant notified Ferrato of this action that same day. Ferrato did not attempt to deposit the stopped payment item into his trustee account until March, 1998. Clearly, the payor bank had ample opportunity to act on the stop-payment order and in fact did so. The defendant's action was therefore timely under § 42a-4-303.

### III

The defendant's final claim on appeal is that the court improperly failed to conclude that judgment should be

---

[6] General Statutes § 42a-4-303 (a) provides: "Any knowledge, notice or stop-payment order received by, legal process served upon, or set-off exercised by a payor bank comes too late to terminate, suspend, or modify the bank's right or duty to pay an item or to charge its customer's account for the item if the knowledge, notice, stop-payment order, or legal process is received or served and a reasonable time for the bank to act thereon expires or the set-off is exercised after the earliest of the following: (1) The bank accepts or certifies the item; (2) the bank pays the item in cash; (3) the bank settles for the item without having a right to revoke the settlement under statute, clearinghouse rule, or agreement; (4) the bank becomes accountable for the amount of the item under section 42a-4-302 dealing with the payor bank's responsibility for late return of items; or (5) with respect to checks, a cutoff hour no earlier than one hour after the opening of the next banking day after the banking day on which the bank received the check and no later than the close of that next banking day or, if no cutoff hour is fixed, the close of the next banking day after the banking day on which the bank received the check."

rendered in favor of the plaintiffs in the amount of $9901.88, the sum that the plaintiffs should have received on the execution. We agree in part.

In addition to correcting the amount of the judgment in accordance with our conclusions in part I, the court must also determine whether the plaintiffs should be awarded interest, which the plaintiffs had requested in their prayer for relief, on the sum of $9901.88. General Statutes § 37-3a authorizes the award of "interest at the rate of ten per cent a year, and no more . . . as damages for the detention of money after it becomes payable. . . ." The defendant does not dispute that the $9901.88 in the judgment debtor's account at the time of execution constituted a debt due to the judgment debtor by the defendant. This sum, therefore, was subject to execution pursuant to § 52-367a and the defendant was obligated to turn over this sum to the plaintiffs pursuant to such execution. The defendant concedes that it failed to comply with its statutory obligation under § 52-367a with respect to these funds.

The defendant, therefore, may be liable for interest at a maximum rate of 10 percent per year on the wrongfully withheld money. "The real question in each case is whether the detention of the money is or is not wrongful under the circumstances." (Internal quotation marks omitted.) *Bertozzi* v. *McCarthy*, 164 Conn. 463, 466, 323 A.2d 553 (1973). Although bad faith is one factor that the court may look at when deciding whether to award interest under § 37-3a, we note that, in the context of the statute, "wrongful" is not synonymous with bad faith conduct. Rather, wrongful means simply that the act is performed without the legal right to do so. Ballentine's Law Dictionary (3d Ed. 1969). Nevertheless, "[t]he allowance of interest as an element of damages is . . . primarily an equitable determination and a matter lying within the discretion of the trial court." *Bertozzi* v. *McCarthy*, supra, 467.

The judgment is reversed in part and the case is remanded with direction to render judgment for the plaintiffs in the amount of $9901.88 together with applicable costs and for further proceedings to determine whether the plaintiffs should be awarded interest on this sum pursuant to § 37-3a. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.