## HARTFORD STEAM BOILER INSPECTION AND INSURANCE COMPANY *v.* UNDERWRITERS AT LLOYD'S AND COMPANIES COLLECTIVE ET AL.
## (AC 30162)

DiPentima, Gruendel and Lavine, Js.*

---
\* The listing of judges reflects their seniority status on this court as of the date of oral argument.

Argued January 11—officially released May 11, 2010

*Paul K. Stockman*, pro hac vice, with whom were *Maurice T. FitzMaurice* and, on the brief, *Robert J. Durbin* and *Thomas E. Birsic*, pro hac vice, for the appellant (plaintiff).

*Jeffrey J. White*, with whom were *Linda L. Morkan* and, on the brief, *Mathew P. Jasinski* and *Clayton H. Farnham*, pro hac vice, for the appellees (defendants).

*Opinion*

GRUENDEL, J. This appeal concerns a dispute between insurance providers. The plaintiff, Hartford Steam Boiler Inspection and Insurance Company,

appeals from the judgment of the trial court confirming an arbitration award and awarding certain prejudgment and postjudgment interest to the defendants, Underwriters at Lloyd's and Companies Collective, National Union Fire Insurance Company, International Fire Insurance Company, Aetna Casualty and Surety Company, Home Insurance Company and Zurich Insurance Company. On appeal, the plaintiff contends that the court (1) improperly remanded the matter to the arbitration panel for clarification of its award, (2) improperly confirmed the arbitration award as clarified and (3) abused its discretion in awarding prejudgment and postjudgment interest. We affirm the judgment of the trial court.

The present dispute arises from a catastrophic explosion on August 11, 1993, at Independence Steam Electric Station Unit Two (facility), a coal fired electrical generating facility located near Newark, Arkansas. The explosion caused more than $28 million in damage. The owners of the facility, Arkansas Power and Light Company and others (collectively referred to as the insureds), submitted claims to their insurance providers, the parties to this appeal. The plaintiff provided a policy of boiler and machinery insurance, while the defendants provided "all risks" property insurance for the insureds. After investigating the loss, both the plaintiff and the defendants denied coverage under their respective policies. The plaintiff claimed that the cause of the loss was an explosion of gas or unconsumed fuel, a peril excluded from its coverage and covered under the all risks policy. The defendants contrarily contended that the loss was caused by the breakdown of a fired vessel, excluded from the coverage provided by the all risks policy because the event did not involve a combustion explosion that would otherwise render it, in whole or in part, a covered loss. Faced with those reciprocal denials, the insureds invoked the "Loss

Adjustment Endorsements" provisions contained in both policies, which enabled the insureds to recover the total losses caused by the explosion by collecting one half of the amount in dispute from each insurance provider company. Pursuant thereto, the insureds recovered $10,933,435.86 from the plaintiff and $11,880,525.33 from the defendants.[1]

The loss adjustment endorsements also contained a provision enabling the parties, after payment to the insureds, to submit any dispute as to respective liability to arbitration. As a result, the coverage dispute between the plaintiff and the defendants was submitted to a panel of three arbitrators. The defendants appointed Edwin W. Whitmore to the panel; the plaintiff appointed Larry E. Gordon. Whitmore and Gordon jointly selected Frank W. Ockerby to serve as the third arbitrator and umpire.

The initial arbitration, referred to by the parties as phase I, commenced in Memphis, Tennessee, in 1996, and was governed by procedures agreed to by the parties. That proceeding focused on the causes of the August 11, 1993 loss and on various factual questions regarding application of certain policy language to certain technical design aspects of the facility. At the request of the arbitrators, the parties stipulated to an October 25, 1996 "joint statement of issues," to be addressed by the arbitrators in their award. On January 9, 1997, the arbitration panel issued an interim award and thereafter issued a supplemental clarified decision in response to the parties' questions as to the meaning of the initial award. In light of those decisions, the parties agreed that each of their policies covered a

---

[1] The difference between those figures is attributable to certain amounts that the parties agreed were within their respective coverages: $948,102.27 in costs that the defendants admitted were covered by the all risks policy and $1012.80 in expenses that the plaintiff admitted were its responsibility under the boiler and machinery policy.

portion of the losses but disagreed as to the apportionment of their respective liability.

That disagreement led the parties to resubmit the matter to the arbitration panel for resolution thereof, thereby commencing phase II of the arbitration. The parties stipulated to a statement of issues, which was limited to a determination of "(i) which costs are directly attributable to the collapse of the coutant support structure (i.e., the 'bottom' costs); (ii) which costs are directly attributable to explosion and/or overpressurization associated with [the facility] (i.e., the 'top' costs); (iii) which costs are directly attributable to fire, firefighting, or the explosion in D Mill; (iv) which costs are common or general project costs that are not allocable into categories (i), (ii) or (iii); and (v) any costs whose purpose or allocation cannot be determined from available evidence, or that do not otherwise fall within categories (i), (ii) or (iii)." The statement of issues further called on the panel to "resolve all liability and allocation issues with respect to each category of costs identified in Paragraph (a), including, without limitation, all coverage issues." In addition, the parties agreed to a revised set of general procedures that would govern phase II of the arbitration. Among those procedures, the parties agreed that "[t]he arbitration award shall be in writing and shall contain findings of fact and conclusions regarding the interpretation of the insurance policies that are the subject of this arbitration as necessary to support the award." In addition, the procedures stated that "[t]here shall be no ex parte communications related to this arbitration between the counsel, parties or arbitrators and the umpire except for routine matters such as addresses, dates, expenses, etc. The parties shall be permitted to contact the umpire for the purposes of setting the dates for the arbitration and other procedural matters. Copies of any communication from the parties or arbitrators to the umpire shall be disclosed to all parties and all arbitrators."

A hearing in Windsor Locks followed on June 28 and 29, 2001. The arbitration panel issued a decision on January 24, 2002, that responded to each question set forth in the stipulated statement of issues. With respect to the first five issues, the panel presented dollar amounts reflecting the allocation of costs corresponding to each question. The panel further determined that "[t]he allocation of $21,182,561.13 paid under the Joint Loss Agreement has been resolved in accordance with policy coverages as follows:

Boiler & Machinery—$14,489,833.52

All Risk—$7,375,012.59

Total—$21,864,846.11."

On February 22, 2002, the plaintiff filed an application to vacate the arbitration award with the Superior Court. In response, the defendants filed their "reply to plaintiff's application to vacate arbitration award, and application to confirm arbitration award, or, in the alternative, to refer to arbitrators for clarification." The court, *Hon. Richard M. Rittenband*, judge trial referee, held a hearing on those applications on May 22, 2002. At that hearing, the plaintiff's primary contention was that the arbitrators should have been more specific in rendering their decision. In its July 31, 2002 memorandum of decision, the court agreed, concluding that "[t]he findings are not sufficiently specific or comprehensive to comply with the requirement that all liability and allocation issues and all coverage issues be resolved, nor do the findings contain sufficient findings of fact and conclusions regarding the interpretation of the insurance policies that are the subject of this arbitration as necessary to support the award." In fashioning a proper remedy, the court noted its reluctance "to vacate the award because that would mean starting over again, and the parties would lose all the work, effort, etc., that covered six years of this arbitration.

In the interest of economy of the parties, the panel and judicial economy, it would appear that a remand to the arbitrators would be more practical and a better remedy than vacating the awards." Accordingly, the court remanded the matter to the arbitration panel for a rehearing to clarify the award so as to include the findings of fact and interpretations of the policies required by the governing procedures.

From that judgment, the plaintiff appealed. In resolving that appeal, our Supreme Court first concluded, after ample discussion of federal law and precedent, that the trial court possessed the legal authority to remand the matter to the arbitration panel "for clarification purposes without vacating the award." *Hartford Steam Boiler Inspection & Ins. Co.* v. *Underwriters at Lloyd's & Cos. Collective*, 271 Conn. 474, 493, 857 A.2d 893 (2004), cert. denied, 544 U.S. 974, 125 S. Ct. 1826, 161 L. Ed. 2d 723 (2005) (*Hartford Steam Boiler*). In so doing, the court emphasized that "when a court remands an arbitration award for clarification . . . there is no opportunity for redetermination on the merits of what has already been decided. . . . On remand, the arbitrator is limited in his review to the specific matter remanded for clarification and may not rehear and redetermine those matters not in question." (Citation omitted; internal quotation marks omitted.) Id., 486. The court further determined that "the trial court's order for a rehearing to clarify the arbitrators' allocation award does not constitute a final judgment, and does not satisfy either prong of the [test set forth in *State* v. *Curcio*, 191 Conn. 27, 31, 463 A.2d 566 (1983)] . . . ." *Hartford Steam Boiler Inspection & Ins. Co.* v. *Underwriters at Lloyd's & Cos. Collective*, supra, 498. The Supreme Court thus concluded that it lacked subject matter jurisdiction to review the merits of the case. Id.

Subsequently, the defendants on December 16, 2004, submitted to the arbitration panel their "[p]roposed

[f]indings of [f]act and [c]onclusions [r]egarding [p]olicy [i]nterpretation" and their "[p]anel [i]nterrogatories . . . ." On December 29, 2004, the plaintiff likewise submitted its "[i]nterrogatories, [p]roposed [f]indings of [f]act and [p]roposed [c]onclusions [r]egarding [p]olicy [i]nterpretation . . . ."

On March 3, 2005, the plaintiff returned to the Superior Court, seeking injunctive relief to preclude Ockerby's participation in further arbitration proceedings. Prior to the May 22, 2002 hearing on the parties' respective applications to confirm and to vacate the arbitration award before Judge Rittenband, the plaintiff had learned of the defendants' intent to call Ockerby to testify as a witness on their behalf. Although allegedly troubled by the ex parte communications between the defendants and Ockerby, the plaintiff voiced no concern before Judge Rittenband. Instead, the plaintiff raised the issue for the first time almost three years later via its March 3, 2005 "application for temporary and permanent injunction."[2] A hearing followed on November 14, 2005. By memorandum of decision filed November 17, 2005, the court, *Scholl, J.*, denied the plaintiff's application for injunctive relief. The court explained the basis of its decision as follows: "First, any alleged ex parte discussions took place after the arbitrators' decision was rendered and, in any event, they do not appear to have involved substantive discussion of the decision or the deliberations leading up to it. . . . Second, as described by the Supreme Court in its decision, 'the arbitration panel's only task on remand is to clarify

---

[2] In its July 9, 2008 memorandum of decision on the plaintiff's motion to vacate and the defendants' motion to confirm the arbitration award, the court, *Dubay, J.*, stated: "It is also worth noting that the plaintiff was aware of the ex parte communications at the time of the hearing before Judge Rittenband. During the May, 2008 hearing before this court, the plaintiff's attorney explained that he did not want to raise the issue until further investigation was conducted."

the factual basis for its allocation of the sums representing each party's liability.' *Hartford Steam Boiler Inspection & Ins. Co. v. Underwriters at Lloyd's & Cos. Collective,* [supra, 271 Conn. 492]. The purpose of the remand is for clarification purposes only and not for a redetermination of the controversy between the parties. Therefore, even assuming misconduct has occurred, it is unclear how it can affect a decision already made. Third, [the plaintiff] has an adequate remedy . . . . [It] will be free, upon the court's review of the clarifying order, to make the same claims that it is making here. . . . [Fourth] the court here is reluctant to preclude participation of one of the arbitrators in further proceedings in this matter, which proceedings are simply to clarify a decision already made and not for redetermination. If the court were to do so, this matter would be left still further from the time of final resolution." (Citation omitted.)

The arbitration panel thereafter reconvened on July 31 and August 1, 2006, to consider the task assigned it by the Superior Court and the Supreme Court. On August 1, 2006, the panel issued its "Clarified Decision of Arbitrators." That decision contained detailed findings of fact and conclusions regarding the interpretation of the insurance policies at issue that clarified how the panel reached its original allocation of expenses between the parties. Significantly, the decision did not alter the terms of the January 24, 2002 award.

On August 11, 2006, the defendants filed a "motion for order confirming arbitration award" that sought confirmation of the panel's January 24, 2002 award and an award of interest. On September 1, 2006, the plaintiff filed an "application to vacate arbitration award." In response, the defendants moved to strike the plaintiff's

application as untimely under General Statutes § 52-420.[3] Judge Scholl denied that motion by memorandum of decision filed April 19, 2007, concluding that the arbitration decision was not final until August 1, 2006, when the panel issued its clarified decision. The parties subsequently filed briefs in support of their respective motions, and the court heard argument thereon on September 20, 2007, and May 7, 2008.

In its July 9, 2008 memorandum of decision, the court, *Dubay, J.*, rejected the plaintiff's claim that "the panel failed to provide 'findings of fact and conclusions regarding the interpretation of the insurance policies that are the subject of this arbitration as necessary to support the award,' as required by the submission." The court found that "the award conforms to the submission. The submission requires 'findings of fact and conclusions' that are 'necessary to support the award.' Unfortunately for the plaintiff, this language is rather broad, and the court's review is limited in that it can only examine whether the panel has complied; the court cannot look to the sufficiency of the panel's explanation. The plaintiff's concerns could have been mitigated with a more specific submission. However, this court cannot impose upon the panel a requirement to make further conclusions than those that it made in its 2006 clarified decision." The court likewise rejected the plaintiff's argument that the arbitration panel's allocation of 30 percent of the top costs to the plaintiff reflected a manifest disregard of the law.

The court next considered the plaintiff's allegations regarding the ex parte communications between Ockerby and the defendants. Although the plaintiff insisted that Ockerby's conduct demonstrated an evident partiality toward the defendants warranting vacation of

---

[3] General Statutes § 52-420 (b) provides that "[n]o motion to vacate, modify or correct an award may be made after thirty days from the notice of the award to the party to the arbitration who makes the motion."

the arbitration award, the court disagreed. It stated: "Although it is undisputed that Ockerby engaged in ex parte communications with the defendants, all of the incidents occurred after the January, 2002 award. It is also undisputed that the procedures governing the arbitration prohibited ex parte communications. There is nothing to suggest, however, that the ex parte communication ban continues in perpetuity. At the time of these ex parte communications, the award was finalized, if imperfect. The plaintiff contends that the January, 2002 award was not a proper award because it did not contain the requisite findings of fact and conclusions of law. However, it is clear from Judge Rittenband's decision that the panel could not change the actual financial award. Rather, the court ordered the panel to provide the requisite information to explain how the panel arrived at the particular numbers. Even with the remand, there was nothing the panel could do to benefit one party or the other because they were only ordered to provide justification and could not modify the award amounts. The plaintiff does not point to any case law that suggests that ex parte communications between an arbitrator and a party are prohibited after the award is made. All of the cases cited by the plaintiff involve ex parte communications that occurred prior to the issuance of the award. The plaintiff is asking this court to extend the doctrine barring ex parte communications between arbitrators and parties months after a finalized arbitration award; this court declines to do so."

In addition, the court was unpersuaded by the plaintiff's material miscalculation argument and the defendants' claim that the plaintiff had waived its right to findings of fact and conclusions of law from the arbitration panel based on an exchange between one of the plaintiff's attorneys and the arbitrators during the phase II hearing. As a final matter, the court concluded that

an award of prejudgment interest pursuant to General Statutes § 37-3a[4] was appropriate: "[I]nterest from January 24, 2002, to the date of today's judgment is warranted in this case. Although it does not appear that the plaintiff made its motions and appeals in bad faith, the plaintiff would receive an unfair advantage if it were allowed to retain this money while the defendants were deprived of its use and the opportunity to earn interest upon it for the past six years. The plaintiff knew the award amount on January 24, 2002, and also knew this amount would not change following Judge Rittenband's remand to the panel for clarification of the award. The court notes that the parties in this matter are engaged in a business that assesses and manages risks, not in a vacuum, but rather along a continuum of time. Therefore, an award of interest is equitable under the circumstances. To do otherwise would in effect mean that the plaintiff profits by disagreeing with its perceived loss in arbitration, while the defendants lose any benefit they were to receive by virtue of the arbitration." The court thus denied the plaintiff's motion to vacate the arbitration award and granted both the defendants' motion to confirm the arbitration award and its motion for prejudgment interest.[5] From that judgment, the plaintiffs commenced the present appeal.

The defendants subsequently filed a motion for postjudgment interest, which the court, *Aurigemma, J.,* granted on June 10, 2009. The court explained the basis of its decision as follows: "The decision of whether to grant interest under § 37-3a is primarily an equitable determination and a matter lying within the discretion

---

[4] General Statutes § 37-3a provides in relevant part that "interest at the rate of ten per cent a year, and no more, may be recovered and allowed in civil actions . . . as damages for the detention of money after it becomes payable. . . ."

[5] The court awarded prejudgment interest "dating from January 24, 2002, to the date of this decision at the rate of 10 percent per year," which totaled $2,298,184.63.

of the trial court. . . . Postjudgment interest is intended to compensate the prevailing party for a delay in obtaining money that rightfully belongs to him. . . . Just as an award of prejudgment interest prevented a benefit to the plaintiff and a detriment to the defendants based on the passage of time, postjudgment interest is also necessary to ensure that the defendants retain the full benefit of the arbitration award. Therefore, the court awards interest to the defendants at the rate of 10 percent per annum from July 10, 2008, until the date the judgment is paid by the plaintiff." (Citations omitted; internal quotation marks omitted.) The plaintiff thereafter amended its appeal to include a challenge to that determination, and the parties submitted supplemental briefs thereon.

I

The plaintiff first challenges the propriety of the court's July 31, 2002 order remanding the matter to the arbitration panel for clarification of its January 24, 2002 award, and the decision of our Supreme Court approving that remand. It is the plaintiff's position that the United States Supreme Court in *Hall Street Associates, L.L.C.* v. *Mattel, Inc.*, 552 U.S. 576, 128 S. Ct. 1396, 170 L. Ed. 2d 254 (2008), overruled the decision of our Supreme Court in *Hartford Steam Boiler*, as well as the body of federal precedent permitting a remand to an arbitration panel for clarification.

The plaintiff failed to preserve that claim before the trial court. *Hall Street Associates, L.L.C.*, was decided on March 25, 2008. Although the plaintiff now claims that the United States Supreme Court in that decision overruled *Hartford Steam Boiler*, the plaintiff did not raise any claim pertaining thereto at the May 7, 2008 hearing before Judge Dubay, nor did it request the opportunity to submit a brief thereon or otherwise attempt to alert the court to that precedent. "It is well

settled that [o]ur case law and rules of practice generally limit this court's review to issues that are distinctly raised at trial." (Internal quotation marks omitted.) *State* v. *Hampton*, 293 Conn. 435, 442, 978 A.2d 1089 (2009); see also Practice Book §§ 5-2 and 60-5. "We have repeatedly held that this court will not consider claimed errors on the part of the trial court unless it appears on the record that the question was distinctly raised at trial and was ruled upon and decided by the court adversely to the appellant's claim." (Internal quotation marks omitted.) *McGuire* v. *McGuire*, 102 Conn. App. 79, 87, 924 A.2d 886 (2007). Although we normally would decline review of the plaintiff's unpreserved claim, we depart from that practice because the claim implicates our obligation to apply the law as it presently stands. See *State* v. *Leonard*, 31 Conn. App. 178, 200 n.18, 623 A.2d 1052, cert. granted on other grounds, 226 Conn. 912, 628 A.2d 985 (1993) (appeal withdrawn January 7, 1994). Whether the trial court properly applied current law a fortiori is a question of law. As such, our review is plenary. See *Fish* v. *Fish*, 285 Conn. 24, 37, 939 A.2d 1040 (2008).

On our reading of *Hall Street Associates, L.L.C.*, we question the correctness of the plaintiff's allegation that the United States Supreme Court overruled the decision of our Supreme Court in *Hartford Steam Boiler*. The issue in *Hall Street Associates, L.L.C.*, was whether parties to an arbitration proceeding could, by contractual agreement, supplement the statutory grounds for vacating an arbitration award, including the standard of review set forth in the statute. *Hall Street Associates, L.L.C.* v. *Mattel, Inc.*, supra, 552 U.S. 585–86. The court answered that query in the negative. Id., 586. As the plaintiff concedes, the decision made no mention whatsoever of the procedure at issue in this appeal—a remand to the arbitration panel for clarification of its award. In addition, the *Hall Street Associates, L.L.C.*,

decision did not cite to or discuss *Hartford Steam Boiler* or the federal authority on which *Hartford Steam Boiler* relied, such as *Green* v. *Ameritech Corp.*, 200 F.3d 967 (6th Cir. 2000), and *International Brotherhood of Teamsters* v. *Silver State Disposal Service, Inc.*, 109 F.3d 1409 (9th Cir. 1997). Tellingly, the *Hall Street Associates, L.L.C.*, decision also emphasized the need "to maintain arbitration's essential virtue of resolving disputes straightaway," noting the court's concern with opening "the door to the full-bore legal and evidentiary appeals that can rende[r] informal arbitration merely a prelude to a more cumbersome and time-consuming judicial review process . . . and bring arbitration theory to grief in postarbitration process." (Citations omitted; internal quotation marks omitted.) *Hall Street Associates, L.L.C.* v. *Mattel, Inc.*, supra, 588; cf. *Hartford Steam Boiler Inspection & Ins. Co.* v. *Underwriters at Lloyd's & Cos. Collective*, supra, 271 Conn. 493–94 (noting "federal and state policies favoring arbitration as a means for expedient resolution of disputes" and expressing reluctance "to erase the work surrounding this belabored arbitration proceeding, causing further delay, more time, and more resources to be expended, when a deficiency may be corrected by a simple clarification from the panel").

Furthermore, our research reveals no decision, federal or otherwise, indicating that *Hall Street Associates, L.L.C.*, overruled the body of precedent permitting a remand to an arbitration panel for clarification or outlawed that procedure. Rather, the procedure remains viable. See, e.g., *Raymond James Financial Services, Inc.* v. *Bishop*, 596 F.3d 183, 196 (4th Cir. 2010) (concluding that "district court did not abuse its discretion in remanding the award to the arbitration panel for clarification of the bases of the award" because "the original award is sufficiently inscrutable that it was reasonable to seek clarification of the basis for the

award from the arbitration panel"); *Turner* v. *United Steelworkers of America, Local 812*, 581 F.3d 672, 676 (8th Cir. 2009) ("[w]ithout question, a reviewing court may ask the arbitrator to clarify an award"); *McQueen-Starling* v. *United HealthGroup, Inc.*, 654 F. Sup. 2d 154, 161, 168 (S.D.N.Y. 2009) (discussing *Hall Street Associates, L.L.C.*, but nevertheless ordering remand to arbitrator for clarification); *Matter of Johnson (Summit)*, 22 Misc. 3d 631, 646–47, 668, 864 N.Y.S.2d 873 (2008) (same); cf. *T.Co Metals, LLC* v. *Dempsey Pipe & Supply, Inc.*, 592 F.3d 329, 346 (2d Cir. 2010) ("if the substance of an award is subsequently changed by a valid amended award, it stands to reason that the finality and import of the original award would be rendered sufficiently ambiguous that a court might justifiably resist confirming the original award, at least absent remand for clarification by the arbitrator"). As one federal court of appeals observed, "[r]emand to an arbitrator for clarification and interpretation is not unusual in judicial enforcement proceedings." *McClatchy Newspapers* v. *Central Valley Typographical Union No. 46*, 686 F.2d 731, 734 n.1 (9th Cir.), cert. denied, 459 U.S. 1071, 103 S. Ct. 491, 74 L. Ed. 2d 633 (1982); see also *Rich* v. *Spartis*, 516 F.3d 75, 83 (2d Cir. 2008) (District Court may remand arbitration award for further clarification if award incomplete or ambiguous); *M & C Corp.* v. *Erwin Behr GmbH & Co.*, 326 F.3d 772, 782 (6th Cir. 2003) ("remand is proper, both at common law and under the federal law of arbitration contracts, to clarify an ambiguous award or to require the arbitrator to address an issue submitted to him but not resolved by the award" [internal quotation marks omitted]); *Colonial Penn Ins. Co.* v. *Omaha Indemnity Co.*, 943 F.2d 327, 333 (3d Cir. 1991) ("[i]t is generally recognized that there are circumstances . . . under which a district court can remand a case to the arbitrators for clarification"); *Galt* v. *Libbey-Owens-Ford Glass Co.*, 397 F.2d

439, 442 (7th Cir.) (District Court properly remanded case for clarification rather than guessing at meaning of arbitrator's award), cert. denied sub nom. *F. H. Sparks Co.* v. *George Sollitt Construction Co.*, 393 U.S. 925, 89 S. Ct. 258, 21 L. Ed. 2d 262 (1968). In short, if the United States Supreme Court intended to overrule that body of precedent in *Hall Street Associates, L.L.C.*, it would have said so.

In connection with this claim, the plaintiff also renews its contention that the remand to the arbitration panel for clarification contravened federal law, specifically, the Federal Arbitration Act, 9 U.S.C. § 1 et seq. That claim was presented to, and rejected by, our Supreme Court in *Hartford Steam Boiler.*[6] *Hartford Steam Boiler Inspection & Ins. Co.* v. *Underwriters at Lloyd's & Cos. Collective*, supra, 271 Conn. 493 n.16.

In addressing the issue of preservation in its reply brief, the plaintiff curiously states that "because the Connecticut Supreme Court has already ruled on the issue, there would be no reason for [the plaintiff] to reassert these arguments in the Superior Court, which . . . was powerless to overrule the prior appellate ruling." We likewise are not at liberty to reconsider or overrule the decision of our Supreme Court in *Hartford Steam Boiler.* As an intermediate appellate body, it is axiomatic that the Appellate Court is "bound by Supreme Court precedent and [is] unable to modify it . . . . [W]e are not at liberty to overrule or discard the decisions of our Supreme Court but are bound by them. . . . [I]t is not within our province to reevaluate or replace those decisions." (Citation omitted; internal quotation marks omitted.) *State* v. *Smith*, 107 Conn. App. 666, 684–85, 946 A.2d 319, cert. denied, 288 Conn.

---

[6] In *Hartford Steam Boiler*, the plaintiff filed a petition for certiorari to the United States Supreme Court, which was denied. *Hartford Steam Boiler Inspection & Ins. Co.* v. *Underwriters at Lloyd's & Cos. Collective*, 544 U.S. 974, 125 S. Ct. 1826, 161 L. Ed. 2d 723 (2005).

902, 952 A.2d 811 (2008); see also, e.g., *State* v. *Brown*, 73 Conn. App. 751, 756, 809 A.2d 546 (2002) ("Our Supreme Court is the ultimate arbiter of the law in this state. We, as an intermediate appellate court, cannot reconsider the decisions of our highest court."); *State* v. *Rodriguez*, 63 Conn. App. 529, 532, 777 A.2d 704 ("we, as an intermediate appellate court, do not reevaluate Supreme Court decisions and are bound by those decisions"), cert. denied, 256 Conn. 936, 776 A.2d 1151 (2001); *State* v. *Fuller*, 56 Conn. App. 592, 609, 744 A.2d 931 ("[i]t is not within our function as an intermediate appellate court to overrule Supreme Court authority"), cert. denied, 252 Conn. 949, 748 A.2d 298, cert. denied, 531 U.S. 911, 121 S. Ct. 262, 148 L. Ed. 2d 190 (2000). Implicit in the plaintiff's appellate brief is an invitation to revisit the determination of our Supreme Court in *Hartford Steam Boiler*. We decline to do so.

## II

The plaintiff next contends that the court improperly confirmed the clarified arbitration award. In that respect, the plaintiff proffers two distinct claims. First, it argues that the arbitration panel imperfectly executed its powers, such that the clarified arbitration award does not conform to the submission.[7] Second, the plaintiff claims that the ex parte communications between

---

[7] Although the plaintiff states that the panel "exceeded [its] powers by failing to include sufficient 'conclusions regarding the interpretation of the insurance policies'," that alleged deficiency better is described as imperfect execution of arbitral powers. As General Statutes § 52-418 (a) provides in relevant part: "Upon the application of any party to an arbitration, the superior court . . . shall make an order vacating the award if it finds any of the following defects . . . (4) if the arbitrators have exceeded their powers *or* so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made." (Emphasis added.)

Additionally, we note that the plaintiff in this appeal has not raised any claim that the arbitration panel manifestly disregarded the law. See *Harty* v. *Cantor Fitzgerald & Co.*, 275 Conn. 72, 88, 881 A.2d 139 (2005) (explaining distinction between claim that award does not conform to submission and claim that arbitrators manifestly disregarded the law).

Ockerby and the defendants mandated vacatur of the arbitration award. We address each in turn.

At the outset, we note certain well established principles governing our review. "Arbitration is a creature of contract and the parties themselves, by the terms of their submission, define the powers of the arbitrators." (Internal quotation marks omitted.) *Industrial Risk Insurers* v. *Hartford Steam Boiler Inspection & Ins. Co.*, 258 Conn. 101, 109, 779 A.2d 737 (2001). "Judicial review of arbitral decisions is narrowly confined. . . . When the parties agree to arbitration and establish the authority of the arbitrator through the terms of their submission, the extent of our judicial review of the award is delineated by the scope of the parties' agreement. . . . When the scope of the submission is unrestricted, the resulting award is not subject to de novo review even for errors of law so long as the award conforms to the submission. . . . Because we favor arbitration as a means of settling private disputes, we undertake judicial review of arbitration awards in a manner designed to minimize interference with an efficient and economical system of alternative dispute resolution. . . .

"Where the submission does not otherwise state, the arbitrators are empowered to decide factual and legal questions and an award cannot be vacated on the grounds that . . . the interpretation of the agreement by the arbitrators was erroneous. Courts will not review the evidence nor, where the submission is unrestricted, will they review the arbitrators' decision of the legal questions involved. . . . In other words, [u]nder an unrestricted submission, the arbitrators' decision is considered final and binding; thus the courts will not review the evidence considered by the arbitrators nor will they review the award for errors of law or fact. . . .

"The significance . . . of a determination that an arbitration submission was unrestricted or restricted is

not to determine what the arbitrators are obligated to do, but to determine the scope of judicial review of what they have done. Put another way, the submission tells the arbitrators what they are obligated to decide. The determination by a court of whether the submission was restricted or unrestricted tells the court what its scope of review is regarding the arbitrators' decision." (Citations omitted; internal quotation marks omitted.) *Industrial Risk Insurers* v. *Hartford Steam Boiler Inspection & Ins. Co.*, 273 Conn. 86, 92–94, 868 A.2d 47 (2005). In the present case, the plaintiff does not challenge the trial court's conclusion that the submission is unrestricted.[8]

In addition, "[e]ven in the case of an unrestricted submission, we have . . . recognized three grounds for vacating an award: (1) the award rules on the constitutionality of a statute . . . (2) the award violates clear public policy . . . [and] (3) the award contravenes one or more of the statutory proscriptions of [General Statutes] § 52-418." Id., 94. Section 52-418 (a) enumerates the following grounds for vacating an arbitration award: "(1) If the award has been procured by corruption, fraud or undue means; (2) if there has been evident partiality or corruption on the part of any arbitrator; (3) if the arbitrators have been guilty of misconduct in refusing to postpone the hearing upon sufficient cause shown or in refusing to hear evidence pertinent and material to the controversy or of any other action by which the rights of any party have been prejudiced; or (4) if the arbitrators have exceeded their powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was

---

[8] To the extent that the plaintiff at oral argument before this court argued that the submission was restricted, we decline to consider that assertion. See *Harty* v. *Cantor Fitzgerald & Co.*, 275 Conn. 72, 83 n.5, 881 A.2d 139 (2005) (refusing to consider claim raised for first time at oral argument that submission was restricted).

not made." The plaintiff's claims implicate the second, third and fourth grounds.

A

The plaintiff first claims that, because the arbitration panel imperfectly executed its powers, the clarified arbitration award does not conform to the submission. We disagree.

A claim that an arbitration award does not conform to the submission is subject to de novo judicial review. *Harty* v. *Cantor Fitzgerald & Co.*, 275 Conn. 72, 84, 881 A.2d 139 (2005). "[T]hat standard best can be understood when viewed in the context of what the court is permitted to consider when making this determination and the exact nature of the inquiry presented. . . . Our inquiry generally is limited to a determination as to whether the parties have vested the arbitrators with the authority to decide the issue presented or to award the relief conferred. With respect to the latter, we have explained that, as long as the arbitrator's remedies were consistent with the agreement they were within the scope of the submission." (Internal quotation marks omitted.) Id., 85–86. "In making this determination, the court may not engage in fact-finding by providing an independent interpretation of the contract, but simply is charged with determining if the arbitrators have ignored their obligation to interpret and to apply the contract as written." Id., 86. In so doing, "[e]very reasonable presumption and intendment will be made in favor of the award and of the arbitrator's acts and proceedings. Hence, the burden rests on the party challenging the award to produce evidence sufficient to show that it does not conform to the submission." (Internal quotation marks omitted.) Id., 88–89.

"In our construction of § 52-418 (a) (4), we have, as a general matter, looked to a comparison of the award

with the submission to determine whether the arbitrators have exceeded their powers." (Internal quotation marks omitted.) *Industrial Risk Insurers* v. *Hartford Steam Boiler Inspection & Ins. Co.*, supra, 273 Conn. 94. We thus begin with a review of the submission. That agreement required the arbitration panel to determine "(i) which costs are directly attributable to the collapse of the coutant support structure (i.e., the 'bottom' costs); (ii) which costs are directly attributable to explosion and/or overpressurization associated with [the facility] (i.e., the 'top' costs); (iii) which costs are directly attributable to fire, firefighting, or the explosion in D Mill; (iv) which costs are common or general project costs that are not allocable into categories (i), (ii) or (iii); and (v) any costs whose purpose or allocation cannot be determined from available evidence, or that do not otherwise fall within categories (i), (ii) or (iii)," as well as "all liability and allocation issues with respect to each category of costs identified in Paragraph (a), including, without limitation, all coverage issues."

The arbitration panel's award answered those issues, assigning dollar amounts as to the allocation of costs corresponding to each question. At no time has the plaintiff suggested that the panel decided a question that the parties had not vested it with the authority to decide. Contra *Hartford* v. *Local 760*, 6 Conn. App. 11, 14–15, 502 A.2d 429 (1986) (award held not to conform to submission because arbitrators determined "question of remedy" not set forth in submission).

In answering the submitted issues, the arbitration panel was instructed to include in its award "findings of fact and conclusions regarding the interpretation of the insurance policies that are the subject of this arbitration as necessary to support the award." In its August 1, 2006 "Clarified Decision of Arbitrators," the panel stated in relevant part: "In determining coverage,

the [p]anel first considered the All Risk [p]roperty [p]olicy. The [i]nsuring clause reads: The [c]ompanies . . . agree: to indemnify the insured against all risks of direct physical loss or damage to the insured property . . . except as hereinafter excluded. Then the [p]anel examined the [e]xclusion [c]lause . . . Breakdown or explosion of any fired vessel, unfired vessel, piping, mechanical or electrical [m]achine or [e]lectrical apparatus other than: (i) Explosion of accumulated gases or unconsumed fuel within a fire box or construction (sic combustion) chamber of any fired vessel or within the flues or passages which conduct the gases of combustion therefrom.

"The panel next looked to the Boiler and Machinery policy which states . . . [i]n consideration of the [p]remium, the [c]ompany agrees with the insured . . . respecting loss from an [a]ccident, as defined herein . . . to an Object, as defined herein . . . . To pay for loss to the [p]roperty of the insured directly damaged by such [a]ccident . . . . Object shall mean any equipment or apparatus described below, subject to the exclusions specified herein: (A) Any boiler, any fired vessel, any unfired vessel subject to vacuum or internal pressure other than static pressure of the contents, any refrigeration system, or any piping and its accessory equipment, and including any boiler or pressure vessel mounted on mobile equipment, but object shall not include: (1) Any boiler setting, any insulation or refractory material . . . . Definition of Accident—Accident shall mean a sudden and accidental breakdown of the object, or a part thereof, which manifests itself at the time of its occurrence by physical damage to the object that necessitates repair or replacement of the object or part thereof, but accident shall not mean . . . (D) The breakdown of any structure or foundation supporting the object or any part thereof . . . (F) An explosion of gas or unconsumed fuel within the furnace of any

object or within the passage from the furnace of said object to the atmosphere . . . .

"During the Phase II [a]rbitration hearing testimony of expert witnesses from both sides were in conflict with each other in most of the [seventeen] [i]tems as seen on Exhibit No. 1. The [seventeen] items represent cost categories based upon the amount of loss as determined by representatives of both parties prior to the [p]anel's involvement. The testimony did not guide the [p]anel on allocation of the [c]ommon or [g]eneral [p]roject [c]osts that applied to all items. Nor were the [p]arties able to agree on apportionment. . . .

"After hearing conflicting testimony from both parties, the panel determined the top and bottom costs as outlined in Exhibit No. 3. In accordance with the above quoted policy provisions and a previous ruling by the [p]anel, the bottom costs are 100 [percent] attributable to the Boiler policy.

"As far as the top is concerned, the [p]anel ruled, based on [the] testimony of witnesses during the initial hearing, that 3. Water released flashed to steam causing damage above and below the coutant wall. 4. There were one or more combustion explosions above the coutant wall which also caused damage. . . . Therefore, the [p]anel concluded that the damage to the lower portion of the top was caused by the force of the expanding steam in the area immediately above the coutant wall. Following the steam damage, the upper portion of the top was damaged by one or more combustion explosions. After considerable discussion and deliberations, the [p]anel concluded that the allocation of the top damage is 30 [percent] Boiler and 70 [percent] All Risk based on . . . policy language and testimony.

"Since the [p]arties were unable to agree on various components of the costs involved . . . the [p]anel reallocated the amount of the Joint Loss of $21,864,846.11

. . . . The [p]anel used its best judgment in considering the testimony and its many years of experience in the commercial property claims adjusting industry. The reallocation was on a percentage basis for the 'top' and 'bottom' costs as determined by the [p]anel."[9] (Citations omitted; internal quotation marks omitted.)

The August 1, 2006 "Clarified Decision of Arbitrators" then proceeded to restate the specific terms of the award in dollar amounts, which terms corresponded precisely with those contained in the panel's January 24, 2002 decision. Consistent with the lesson of our Supreme Court in *Hartford Steam Boiler* that "when a court remands an arbitration award for clarification . . . there is no opportunity for redetermination on the merits of what has already been decided"; *Hartford Steam Boiler Inspection & Ins. Co.* v. *Underwriters at Lloyd's & Cos. Collective*, supra, 271 Conn. 486; the clarified decision did not alter the terms of the January 24, 2002 award.

The plaintiff acknowledges that the panel's clarified decision contains findings of fact and conclusions regarding the interpretation of the insurance policies but insists that they "are not 'specific' or 'comprehensive' enough" to satisfy the submission. We disagree. The submission required only that the panel include in its award "findings of fact and conclusions regarding the interpretation of the insurance policies that are the subject of this arbitration as necessary to support the award."[10] Such determinations are contained in the clarified decision. Accordingly, we conclude that the plain-

---

[9] "It is true that the award rather than the finding and conclusions of fact controls and, ordinarily, the memorandum of an arbitrator is irrelevant. . . . The memorandum, however, may be examined in determining whether an arbitrator has exceeded his authority by making an award beyond the scope of the submission." (Citation omitted; internal quotation marks omitted.) *Waterbury Construction Co.* v. *Board of Education*, 189 Conn. 560, 563, 457 A.2d 310 (1983).

[10] As Judge Dubay aptly noted in his memorandum of decision, "[t]he plaintiff's concerns could have been mitigated with a more specific submission."

tiff has not met its burden of demonstrating that the award fails to conform to the submission.

B

The plaintiff next argues that the ex parte communications between Ockerby and the defendants mandated vacatur of the arbitration award. As the court found in its memorandum of decision, the ex parte communications arose when "Ockerby assisted the defendants in preparation for the hearing before Judge Rittenband in 2002 by serving as their paid witness and consultant." The court further found that "[a]lthough it is undisputed that Ockerby engaged in ex parte communications with the defendants, all of the incidents occurred *after* the January [24] 2002 award." (Emphasis in original.) On appeal, the plaintiff claims that those communications demonstrate actual misconduct and evident partiality on the part of Ockerby.[11] The burden rests with the plaintiff to establish these claims. See *Alexson* v. *Foss*, 276 Conn. 599, 617, 887 A.2d 872 (2006).

The plaintiff first claims that the ex parte communications demonstrate actual misconduct on the part of Ockerby in that he violated the procedures governing phase II of the arbitration. We are not persuaded.

The procedures are divided into "[p]re-[h]earing [p]rocedures," "[h]earing [p]rocedures" and "[p]ost-[h]earing procedures." Among the posthearing procedures is the provision that "[t]here shall be no ex parte communications related to this arbitration between the counsel, parties or arbitrators and the umpire except

---

[11] General Statutes § 52-418 (a) provides in relevant part: "Upon the application of any party to an arbitration, the superior court . . . shall make an order vacating the award if it finds any of the following defects . . . (2) if there has been evident partiality or corruption on the part of any arbitrator; (3) if the arbitrators have been guilty of misconduct in refusing to postpone the hearing upon sufficient cause shown or in refusing to hear evidence pertinent and material to the controversy or of any other action by which the rights of any party have been prejudiced . . . ."

for routine matters such as addresses, dates, expenses, etc. The parties shall be permitted to contact the umpire for the purposes of setting the dates for the arbitration and other procedural matters. Copies of any communication from the parties or arbitrators to the umpire shall be disclosed to all parties and all arbitrators."

The court found, and the plaintiff does not dispute, that all of the ex parte communications between Ockerby and the defendants transpired after the panel had rendered its January 24, 2002 award. The procedures do not state that the prohibition of ex parte communications continues beyond the issuance of the arbitration award. Had the parties intended to proscribe such communications in perpetuity, the agreement could have so provided. Indeed, the posthearing procedure concerning confidentiality provides that neither the parties nor the arbitration panel shall disclose the contents of the matter "at any time . . . ."

The plaintiff has provided no authority for the proposition that ex parte communications, irrespective of content or context, constitute actual misconduct requiring vacatur of an arbitration award. To the contrary, this court has held that "the ex parte communications must involve facts, issues or evidence relevant to the subject of the arbitration proceedings" to be deemed misconduct warranting vacation of an arbitration award pursuant to § 52-418 (a) (3). *Vincent Builders, Inc.* v. *American Application Systems, Inc.*, 16 Conn. App. 486, 496, 547 A.2d 1381 (1988), cert. denied, 210 Conn. 809, 556 A.2d 608 (1989). The plaintiff has neither alleged nor proven that the ex parte communications between Ockerby and the defendants pertained to the merits of the arbitration proceeding. We thus cannot say that the plaintiff has demonstrated that Ockerby engaged in actual misconduct.

We likewise are not persuaded by the plaintiff's claim of evident partiality on the part of Ockerby. The court

had before it the deposition testimony of Ockerby, Clayton H. Farnham, an attorney for the defendants, and Norman Kuhn, an adjuster for the defendants, which indicated that the ex parte communications did not concern the arbitration award or the manner in which the panel reached it. That deposition testimony further indicated that the defendants had contacted Ockerby prior to the hearing before Judge Rittenband for the limited purpose of demonstrating waiver on the part of the plaintiff.[12] That evidence supports the court's conclusion that the plaintiff failed to demonstrate evident partiality on the part of Ockerby.

Moreover, we agree with the court that the plaintiff failed to establish any harm resulting from Ockerby's alleged partiality. See *Whitney Co.* v. *Church*, 91 Conn. 684, 690, 101 A. 329 (1917) (holding that no harm resulted from alleged evident partiality on part of arbitrators). In *Hartford Steam Boiler*, our Supreme Court made clear that when the trial court remanded the arbitration award for clarification there would be "no opportunity for redetermination on the merits of what has already been decided. . . . On remand, the [arbitration panel] is limited in [its] review to the specific matter remanded for clarification and may not rehear

---

[12] In *Hartford Steam Boiler*, the defendants filed a cross appeal regarding the waiver issue. As the Supreme Court stated: "In its cross appeal, the [defendants] seek confirmation of the arbitrators' award, claiming that the trial court improperly determined that [the plaintiff] did not waive its right to contest the sufficiency of the arbitrators' award. Specifically, [they] contend that [the plaintiff's] statement at the arbitration hearing that it sought a decision reflecting merely 'a statement that someone pays someone and how much they pay,' constituted a waiver of [the plaintiff's] right to challenge the award on any basis other than the dollar amount allocated to each party." *Hartford Steam Boiler Inspection & Ins. Co.* v. *Underwriters at Lloyd's & Cos. Collective*, supra, 271 Conn. 478 n.4. The court did not reach the merits of that cross appeal due to the lack of a final judgment. Id., 498. In moving for confirmation of the clarified arbitration award, the defendants unsuccessfully renewed that claim before the trial court. They have not filed a cross appeal related thereto with this court.

and redetermine those matters not in question." (Citation omitted; internal quotation marks omitted.) *Hartford Steam Boiler Inspection & Ins. Co.* v. *Underwriters at Lloyd's & Cos. Collective,* supra, 271 Conn. 486. Having already issued an award allocating costs arising from the August 11, 1993 explosion, the panel was prohibited from revisiting that determination.[13] As the plaintiff averred in its September 1, 2006 application to vacate the clarified arbitration award, Ockerby's "partiality, misconduct and misbehavior would not impact the ultimate financial result of the arbitration." This arbitration concerns the division of liability between the parties. Because that division was decided in the panel's January 24, 2002 award, it was insulated from further action by the panel on remand. As the court observed, "there was nothing the panel could do to benefit one party or the other because they were only ordered to provide justification and could not modify the award amounts." We thus reject the plaintiff's claim that the ex parte communications between Ockerby and the defendants mandated vacatur of the arbitration award.

III

The plaintiff also claims that the court abused its discretion in awarding prejudgment and postjudgment

---

[13] In a January 18, 2005 letter to the parties signed by all three panel members that was introduced into evidence before the trial court, *Dubay, J.,* the panel voiced a similar objection to the plaintiff's call for Ockerby's recusal, stating in relevant part: "Mr. Ockerby has made a decision not to resign from the Panel contrary to [counsel for the plaintiff's] suggestion. The other members of the Panel concur with his decision. First of all, in the nearly nine years we have been operating as a Panel, the parties' appointed members have found his actions to be fair and unbiased. Secondly, the amount of the award was determined by the Panel three years ago, as set forth in the award dated January 24, 2002. The only remaining task for the Panel is to clarify the award to include '. . . a sufficient finding of facts and interpretations of the policies so as to fully comply with the submissions.' Since the full Panel was involved in determining the amount of the award, it would seem proper for the full Panel to clarify it."

interest pursuant to § 37-3a. "The decision of whether to grant interest under § 37-3a is primarily an equitable determination and a matter lying within the discretion of the trial court." (Internal quotation marks omitted.) *MedValUSA Health Programs, Inc.* v. *MemberWorks, Inc.*, 273 Conn. 634, 666, 872 A.2d 423, cert. denied sub nom. *Vertrue, Inc.* v. *MedValUSA Health Programs, Inc.*, 546 U.S. 960, 126 S. Ct. 479, 163 L. Ed. 2d 363 (2005). "Under the abuse of discretion standard of review, [w]e will make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion. . . . [Thus, our] review of such rulings is limited to the questions of whether the trial court correctly applied the law and reasonably could have reached the conclusion that it did." (Internal quotation marks omitted.) *Carrano* v. *Yale-New Haven Hospital*, 112 Conn. App. 767, 772, 963 A.2d 1117 (2009).

The purpose of § 37-3a "is to compensate plaintiffs who have been deprived of the use of money wrongfully withheld by defendants." *Paulus* v. *LaSala*, 56 Conn. App. 139, 151, 742 A.2d 379 (1999), cert. denied, 252 Conn. 928, 746 A.2d 789 (2000). Because an award of interest under § 37-3a is an equitable determination, it "should be made in view of the demands of justice rather than through the application of any arbitrary rule. . . . Whether interest may be awarded depends on whether the money involved is payable . . . and whether the detention of the money is or is not wrongful under the circumstances." (Internal quotation marks omitted.) *MedValUSA Health Programs, Inc.* v. *MemberWorks, Inc.*, supra, 273 Conn. 666.

In granting the defendants' motion for an award of prejudgment interest, the court concluded that "interest from January 24, 2002, to the date of today's judgment is warranted in this case. Although it does not appear that the plaintiff made its motions and appeals in bad faith, the plaintiff would receive an unfair advantage if it

were allowed to retain this money while the defendants were deprived of its use and the opportunity to earn interest upon it for the past six years. The plaintiff knew the award amount on January 24, 2002, and also knew this amount would not change following Judge Rittenband's remand to the panel for clarification of the award. The court notes that the parties in this matter are engaged in a business that assesses and manages risks, not in a vacuum, but rather along a continuum of time. Therefore, an award of interest is equitable under the circumstances. To do otherwise would in effect mean that the plaintiff profits by disagreeing with its perceived loss in arbitration, while the defendants lose any benefit they were to receive by virtue of the arbitration." Plainly, the court determined that the demands of justice required an award of prejudgment interest in the present case. Indulging every reasonable presumption in favor of that ruling, we cannot say that the court's determination reflected an abuse of discretion.

We also reject the plaintiff's assertion that "prejudgment interest cannot be awarded before—at the earliest—the issuance of the 2006 [clarified] [a]ward." The plaintiff has provided no authority in support of that allegation. To the contrary, our Supreme Court has held that "a trial court has discretion, under General Statutes § 37-3a, to award prejudgment interest on an arbitration award retroactively to some date prior to the date of the trial court's judgment affirming the award. . . . Implicit in that determination is the conclusion that the prior date may be the date of the arbitration award." (Citation omitted.) *Chmielewski* v. *Aetna Casualty & Surety Co.*, 218 Conn. 646, 675–76, 591 A.2d 101 (1991).

As a final matter, the plaintiff contests the award of postjudgment interest rendered by the trial court following the commencement of this appeal. In so doing, the court stated: "The decision of whether to

grant interest under § 37-3a is primarily an equitable determination and a matter lying within the discretion of the trial court. . . . Postjudgment interest is intended to compensate the prevailing party for a delay in obtaining money that rightfully belongs to him. . . . Just as an award of prejudgment interest prevented a benefit to the plaintiff and a detriment to the defendants based on the passage of time, postjudgment interest is also necessary to ensure that the defendants retain the full benefit of the arbitration award. Therefore, the court awards interest to the defendants at the rate of 10 percent per annum from July 10, 2008, until the date the judgment is paid by the plaintiff." (Citations omitted; internal quotation marks omitted.) The plaintiff now challenges the propriety of that determination, alleging that the court's determination lacked a finding that the plaintiff wrongfully withheld payment. In its concise memorandum of decision, the court did not specifically address that issue. The plaintiff, however, did not seek an articulation requesting further specificity as to that allegation, as permitted by Practice Book § 66-5. In the absence of a motion for articulation, we must presume that the court acted properly; see *Berglass* v. *Berglass*, 71 Conn. App. 771, 789, 804 A.2d 889 (2002); which, in the present case, compels the conclusion that the court implicitly found wrongful detention on the part of the plaintiff. As this court has noted, "in the context of [§ 37-3a], wrongful is not synonymous with bad faith conduct. Rather, wrongful means simply that the act is performed without the legal right to do so. . . . Nevertheless, [t]he allowance of interest as an element of damages is . . . primarily an equitable determination and a matter lying within the discretion of the trial court." (Citation omitted; internal quotation marks omitted.) *Ferrato* v. *Webster Bank*, 67 Conn. App. 588, 596, 789 A.2d 472, cert. denied, 259 Conn. 930, 793 A.2d 1084 (2002). Given the particular facts of this case, the

court did not abuse its discretion in awarding postjudgment interest.

The judgment is affirmed.

In this opinion the other judges concurred.

---

* The listing of judges reflects their seniority status on this court as of the date of oral argument.